## JUDSON *against* BLANCHARD:

### IN ERROR.

Where the supreme court of errors, on the reversal of a judgment of the superior court affirming a judgment of the county court, remanded the cause to the county court, next to be holden in the county, to the end that the original plaintiff might there enter the writ and process, if she should see cause, in which case the said court should proceed according to law; and the cause was entered in the docket of such court, on the first day of the term, without the knowledge of the adverse party, or the service of any notice upon him, after which he appeared, and pleaded his want of notice, and, on such plea being adjudged *insufficient*, the general issue; it was held, that it was not necessary for the party entering the cause to give notice of such entry to the adverse party; but if otherwise, the appearance of the adverse party, with knowledge of the entry, superseded the necessity of other notice.

In a prosecution for the maintenance of a bastard child, after the complainant had supported the facts stated in her complaint, by her oath, the defendant introduced a witness, who testified, that the complainant, in a certain conversation with him, had said, that the defendant was not the father of the child. The complainant's counsel then offered her as a

HARVARD LAW LIBRARY

*Fairfield,*
*June,*
*1823.*

Judson
*v.*
Blanchard.

witness to contradict this testimony. Held, that she was a competent witness for such purpose.

The term *maintenance*, as used in the statute of Bastardy, includes *lying in expenses*—or, the expenses necessarily incurred by the mother, at the birth of the child, and during her sickness consequent to parturition. Therefore, where the county court, in a prosecution for the maintenance of a bastard child, having adjudged the defendant to be the reputed father, allowed, as part of the maintenance, two charges for board of the mother for seven weeks each, the board and wages of a nurse, and sundry articles of cloathing for the mother, which expenses were found to be necessarily incurred for the child, at its birth, and for nursing the same; it was held, that such allowance was authorized by the statute.

On a writ of error between the present parties, before this court, in *Fairfield* county, *June* term, 1821, it was adjudged, that in the judgment of the superior court, complained of, affirming a judgment of the county court, there was manifest error; and the judgments of both courts were reversed. This court then passed an order, in the following words: " And this cause is remanded to the county court next to be holden in the county of *Fairfield*, to the end that the said *Sarah Blanchard* may there enter the said writ and process, if she see cause; in which case, the said court shall proceed according to law." At the next term of the county court, *viz.* in *November*, 1821, on the first day of the term, the name of the cause was entered in the docket of the court, without the knowledge of *Judson*, the defendant, and without any notice thereof to him, except what arose from his having been a party to the cause remanded; and being called, he did not appear. On the fourth day of the term, *Sarah Blanchard* appeared to try the cause. The attorney of *Judson*, then, as *amicus curiæ*, informed the court, that he, *Judson*, had had no notice of the entry or pendency of the action. The court decided, that the cause might proceed without further notice to him. He then appeared by his attorney, and pleaded in abatement his want of actual service or notice. This plea was adjudged insufficient.

On the trial of the cause on the merits, the defendant introduced *William Tucker*, who testified, that soon after the decision of the before-mentioned writ of error, in the summer of 1821, he saw the complainant, and informed her, that *Judson* had gained his cause, and asked her whether he was, in fact, the father of the child; to which the witness understood her to reply, that he was not. The counsel of the complainant then offered her as a witness to testify respec-

ing this conversation; and she testified that she knew *Tucker*, but that she never saw him at the time mentioned by him, and had had no conversation with him on the subject. On the argument of the cause, the defendant's counsel objected to the competency of the complainant's testimony, on the ground that she was a party, and the statute had not made her a witness for this purpose. The court overruled the objection, and decided, that her testimony, so given, was admissible.

In the course of the trial, the complainant offered a bill of expenses, with evidence to support it, amounting to 109 dollars, 15 cents, containing, among others, the following items:

| | |
|---|---:|
| Boarding *Sarah Blanchard* 7 weeks, including her lying in sickness, | $21 00 |
| Boarding a nurse 7 weeks, at 2 dollars per week, | 14 00 |
| Paying said nurse for 7 weeks services, | 10 00 |
| 2 Shirts for *Sarah Blanchard*, | 2 25 |
| 2 Pair of stockings for the same, | 1 75 |
| 1 Pair of shoes for the same, | 1 25 |
| 7 Other weeks boarding *Sarah Blanchard*, nursing and taking care of her, | 14 00 |

The defendant objected to the allowance of these items, or any of them, and to any evidence in support of the charges for board and cloathing of the complainant, and for the board of her nurse; but the court admitted the evidence, and allowed all the charges.

After reciting the original and supplemental complaints, and the process, the court found and decreed as follows: "That the facts in said original and supplemental complaints alleged, are true; and that the defendant is *guilty*, in manner and form, as in siad complaints is alleged; and this court doth adjudge the said *Agur Judson* to be the reputed father of said child; and, on due examination, doth moreover find, that the lying-in expenses, necessarily incurred and paid by the said *Sarah*, for the said child, at its birth, and for nursing the same, have amounted to the sum of 109 dollars, 15 cents, and that of right the defendant ought to pay thereof the sum of 54 dollars and 72 cents, being the one half," &c.

On a writ of error brought by the defendant, this judgment was affirmed, by the superior court; and to obtain a reversal of that judgment, the present writ of error was brought.

Fairfield,
June,
1823.

Judson
v.
Blanchard.

*N. Smith* and *Sherman,* for the plaintiff in error, contended, 1. That it was not competent for the complainant to enter her cause in the county court, and proceed to trial, without notice to the defendant, actual or constructive ; and that, in this case, there was neither. Actual notice from the complainant is not claimed. If he had any notice, it was either constructive, or that which he obtained by coming into court. First, no notice could be implied from the order of the supreme court of errors remanding the cause ; because it was not absolute, but gave the complainant an option to enter the cause, or not. She had a right to enter the cause, and proceed to trial ; to omit entering the cause, and bring a new suit; or to drop the prosecution entirely. It depended as much on her will, what further should be done, as though nothing had been done. By the terms of the order, the cause could not be *pending* before the county court, without her act. Is it a legal presumption, that a party, having a right to do an act or not, as he may think fit, *will do it ?* Suppose the complainant had elected not to enter her cause, and the defendant had appeared, and claimed costs ; could he have recovered them ? If he could not, it must be because his attendance, without further notice, was not legally required. A judgment rendered against a party not legally bound to appear, is manifestly erroneous. Secondly, if the defendant was not legally bound to appear, his coming into court, and objecting to further proceedings in the cause for want of notice, did not give him notice. If a party in an original suit comes in, and pleads in abatement the want of service ; is such act a waiver of service ? If so, a plea in abatement is necessarily a *felo de se.* The defendant made his objection in the only mode in which he could make it ; and the proposition, that the very act of making the objection, removed the ground of it, is one too absurd to require an argument to refute it.

2. That the county erred in admitting the complainant as a witness to contradict *Tucker.* The statute, from the necessity of the case, has made her a witness to a single point, *viz.* who is the father of the child. This necessity arises from the secrets of the bed-chamber. Where other evidence can ordinarily be had, neither the object of the statute, nor the terms of it, require, that she should be admitted. Accordingly, it has been decided, in *Massachusetts,* under a statute similar to ours, that the accusation by the mother,

and her constancy in it, must be proved by other testimony than her own. *Drowne v. Stimpson,* 2 *Mass. Rep.* 441. *Tucker's* testimony, in this case, went to prove the inconstancy of the complainant in her accusation. If she may contradict him, she may testify to her own constancy.

*Fairfield,*
*June,*
*1823.*

Judson
*v.*
Blanchard.

3. That the county court erred in allowing certain expenses, which were neither *lying-in* expenses, nor for the maintenance of the child. The words of the statute, are, that the reputed father of the child " shall stand charged with the maintenance thereof." (*Stat.* 99. ed. 1808.) In addition to such maintenance, the revised statute, adopting the construction of the court in *Comstock v. Weed,* 2 *Conn. Rep.* 155. has added lying-in expenses. *Rev. Stat.* 92. For any other expenses, no statute or judicial decision warrants a recovery. The first charge excepted to, is for the boarding of the complainant 7 weeks, *including* her lying-in sickness. From the face of the charge, it is apparent, that her lying-in sickness did not extend through the whole of the 7 weeks. The charge for boarding her nurse, during the same period, is exceptionable on the same ground. Shirts, shoes and stockings for the mother, were not lying-in expenses, nor did they contribute to the maintenance of the child. Upon the same principle, the court might have furnished the mother's wardrobe for an indefinite period. The last charge excepted to, *viz.* " for 7 *other* weeks boarding," &c. by the terms of it, excludes lying-in expenses. No reason can be given for allowing the " 7 other weeks boarding" here specified, which would not equally apply to another 7 weeks after that, and so on indefinitely ; and if for board, then also for necessary cloathing. This would make the putative father liable for the maintenance of the *mother,* instead of the *child.* Lying-in expenses comprise what is necessary for the mother during parturition, and nothing more. Besides, the articles in question were not allowed as lying-in expenses, but as the wearing apparel and support of the mother.

*Daggett* and *C. H. Beardsley,* for the defendant in error, contended, 1. That the judgment complained of was not erroneous, through defect of notice. In the first place, no notice was necessary other than that given to the parties in court, by the order remanding the cause. By the terms of the order, of which both the parties were apprised, the complainant had nothing to do, but to enter the cause in the next

*Fairfield,*
June,
1823.

Judson
*v.*
Blanchard.

county court. But it is said, that the order was not peremp-
tory. Is it so, then, that a party is not obliged to take notice
of a conditional order? On the reversal of a judgment by
the superior court, the plaintiff may enter his cause for trial
in that court, or not, at his option; but he is never required to
give notice of his election. So, on an appeal, the appellant
may, or may not, enter the cause in the court above; but he
is not obliged, in any event, to give notice to the opposite
party. Secondly, the defendant had, in fact, reasonable no-
tice; as he came into court early in the term, and entered
his plea, on which issue was joined. He had all the informa-
tion, which was necessary for his defence. This answered
the purposes of justice; and in the absence of any statute, or
rule of court, or course of practice, positively prescri-
bing a different form of notice, it will be deemed sufficient.
It was the business of the county court to see, that he had,
under all the circumstances of the case, reasonable notice:
this they did see; and they decided accordingly. This court
cannot say, that they decided wrong.

2. That the complainant was a competent witness to con-
tradict the testimony of *Tucker.* Here, it is not necessary to
contend, that she was a general witness in the cause. *Tuck-
er's* testimony went to shew, from the acknowledgment of the
complainant, that *Judson* was not the father of the child.
This was a point, to which she would be, under any circum-
stances, a competent witness. Now, in every case, where a
witness is competent to prove a particular fact, he may, if
contradicted by another witness, disprove the testimony of
that witness; for the effect of it is, to corroborate his own
testimony.

3. That the judgment of the county court, in relation to
the allowance of expenses, was unexceptionable. In the first
place, that court have found, that the expenses allowed were
"lying-in expenses, necessarily incurred and paid by the said
*Sarah,* for the said child, at its birth, and for nursing the
same." This finding is conclusive. But secondly, if the
question were still open, this court could not see, that the
expenses allowed were of a different description. The
term, *lying-in expenses,* must be understood with reference to
the subject matter. It is not limited, in its application, to the
mere expenses of parturition, but extends to the period,
during which the mother is affected by the birth of
the child. The county court allowed 14 weeks for this pe-

riod. Now, can this Court see, that the mother was not sick so long? What particular articles or charges ought to be allowed as coming within the term, depends upon the question whether they were *necessary.* Can this Court see, that board, and nursing, and shirts, and stockings, and shoes, were not necessary?

*Fairfield,*
*June,*
1823.

Judson
*v.*
Blanchard.

HOSMER, Ch. J. This Court, at a former term, remanded the cause of *Sarah Blanchard,* the defendant in error, against the plaintiff in error, to the county court next to be holden in the county of *Fairfield,* to the end that the said *Sarah Blanchard* might enter the writ and process, if she should see cause; in which event the said court was to proceed according to law. (a) The cause was entered, on the first day of the term, in the docket of the court to which it was remanded, and without the knowledge of *Judson,* the plaintiff in error and defendant in the suit, or any notice to appear having been served upon him; and being called, he did not appear. On the fourth day of the term, *Sarah Blanchard* appeared to give testimony in the cause; and the attorney of *Judson,* as *amicus curiæ,* informed the court, that notice of the entry of the action had not been given to him. But as *Judson* was party in the cause before the supreme court of errors, which court had remanded it, in the manner before-mentioned, to the county court, it was thought proper to proceed without further notice than by this transaction was constructively imparted. After this, *Judson* appeared by his attorney, and pleaded his want of notice, which plea was adjudged insufficient; and then, under the plea of *not guilty,* the merits of the cause were heard and determined. Whether the proceeding and determination of the court above stated were legally correct, is the first question which the writ of error presents.

The point in controversy does not depend for its solution on any principle of common law, but on a rule of practice, which has long been established in this state. Causes have frequently been remanded from the supreme court of errors, and from the superior court, to the county courts, to be entered there by one of the parties only. In some instances, the order of the court may have been mandatory; but in others, it has been merely permissive, as it was in this case. In every instance, I believe, without a single exception, on

(a) See *Judson* v. *Blanchard* in error, 3 *Conn. Rep.* 579. 587.

*Fairfield,*
*June,*
*1823.*

Judson
*v.*
Blanchard.

the entry of the action, pursuant to the mandate or permission of the supreme court of errors, or of the superior court, the adverse party has appeared without having been notified to appear; and the question now agitated on this subject, so far as I am informed, is the first of the kind that ever has been made.  Having been a party to the suit in the court above, when the order of the court remanding it, and directing it to be entered in the court below, was passed, and having knowledge of this fact, it has been the legal presumption, that as the plaintiff would enter the cause, if he elected so to do; so, on the other hand, that the defendant would likewise appear, if he had any defence to make.  I am perfectly aware, that the simplicity of our practice, in this particular, and in many others, receives no countenance from the rules adopted in the courts of other countries and states.  But as no embarrassment or disadvantage has ever arisen here from this source, and, on the contrary, much benefit has been derived from it, a reference to the rules of practice in other states can have no influence on our determination.

Besides the direct establishment of a rule of practice, applicable to the subject before us, authorizing the proceeding of the county court, the argument from analogy is irresistibly convincing.  On an appeal from the county to the superior court, notice of having entered the action in the court above, is never required.  So, on the reversal of a judgment, by the superior court, the plaintiff, in many cases, is permitted to enter the cause for trial; but of the entry notice is never given; and the defendant is considered as having constructive knowledge of the fact.  When the rules of practice are found to be inconvenient, or productive of injustice, they may be altered at pleasure, as they will have no retrospect, nor shake any question already settled; but, until some ill consequence results from them, they must be adhered to.

If notice had been required, the actual appearance of *Judson*, without reference to the cause for which he appeared, would have rendered it unnecessary.  The time and manner of the notice, are not prescribed by any law; and all that could be necessary, would be reasonable information that the cause had been entered.  Had the court directed the defendant to be notified, at any time during its session, it would have been neither unreasonable nor unjust, as it had the power of postponing the trial of the action, so long as the interests of justice should demand.  Now, with knowledge of the entry

of the suit, the defendant having appeared before the court in the plaintiff's action, before the period, when an order of notice, if one were necessary, need have been served; he had all the knowledge and notice, which could be required.

Had the law prescribed notice within a certain time, or in a specified manner, a compliance with it would have been indispensible. But, as on the ground assumed by the defendant, reasonable notice of the pendency of the action before the court, was all which could be demanded, and his appearance, with full knowledge, left nothing remaining but a mere form of perfect insignificance, it would be disgraceful to the administration of justice, to consider this omission of a proceeding, entirely nugatory, and perfectly destitute of use, as possessing any materiality.

*Sarah Blanchard,* on the trial of her cause in the county court, was permitted, as a witness, to deny having had any conversation with one *Tucker,* who had made oath to observations of hers, which tended to fix upon her the charge of inconstancy of accusation. The propriety of this admission of the plaintiff to testify gives rise to the second question in this case.

The testimony of the plaintiff, in my opinion, was legally admissible. In the first place, she had a right, by the practical construction, which has been put on our law concerning " *Bastards and Bastardy,*" to support, by her own evidence, the constancy of her charge. *Warner* v. *Willey,* 2 *Root,* 490. It has often been decided, that the *discovery* of the truth in the time of travail, must be proved, by the testimony of some person or persons present, other than the woman making the declaration. *Hitchcock* v. *Grant,* 1 *Root* 107. *Warner* v. *Willey,* 2 *Root* 490. This construction of the statute is reasonable, and obviously pursues the intention of the legislature, in their having regarded the performance of a solemn and public act, in the presence of witnesses. But whether the constancy of accusation may be supported, by the testimony of the plaintiff, stands altogether on a different ground; and here, it has always been so considered. On the general principles of evidence, the witness is always permitted to give testimony to facts and circumstances corroborative of his credibility, and to repel, by his testimony, evidence which tends to his discredit. And the reason for admitting the plaintiff, in this case, to give similar testimony, is, in no respect, diminished. If she may testify at all, there is a moral necessity

*Fairfield,*
June,
1823.

Judson
*v.*
Blanchard.

HARVARD LAW LIBRARY

for the admission of this species of evidence. A pretended conversation, had in secret, might otherwise deprive her of all credit, from the impossibility of refuting it, except by her own testimony ; and having, at best, only a credibility, weakened by her interest in the cause, the novel principle contended for, would essentially frustrate the object of the law. In conclusion, on this point, I am entirely satisfied, that the testimony objected to, was, by the court, admitted, in consonance with principle, long and legally established.

It remains to be enquired, whether the court below made an improper allowance for *lying-in* or *child-bed* expenses. From the record, it appears, that the lying-in expenses necessarily incurred and paid for the child of the said *Sarah*, at its birth, and for nursing the same, amounted to 109 dollars, 15 cents, the one half of which sum was allowed against said *Judson*. The county court have conclusively established the fact, that the items of the above charge were *necessaries ;* and over this question the superior court is invested with no controul. The only enquiry before the court, is, whether the articles furnished, necessary as they were, are of that description, that the defendant, *Judson*, was under a legal obligation to supply them. The items supposed to be objectionable, are the charges for nursing, and for necessaries, board and cloathing, furnished the plaintiff. The reputed father of a bastard child, by the words of the statute; (*p.* 62.) " shall stand charged with the maintenance of such child, with the assistance of the mother." The term " maintenance," has been construed to mean the expenses of lying-in, or child-bed expenses, such as board, wages, and other charges attendant on nursing the child, and the necessary expenditures at the birth of the child, and even after the birth, which do not extend beyond the period of the sickness consequentially resulting from the act of parturition. In *Bennett* v. *Hall*, 1 *Conn. Rep.* 417. the expenses necessarily incurred by the mother for her illegitimate child, at its birth, and for nursing the same for a period afterwards, were allowed by the court ; and in *Comstock* v. *Weed*, 2 *Conn. Rep.* 155. a similar charge was established. In the latter case, it was said, by Ch. J. *Swift*, " The allowance of expenses, *at the birth of the child*, cannot be considered as extending beyond *lying-in* expenses. These have always been allowed." It has justly been remarked, in relation to the matter under discussion, by a former respecta-

ble judge of this court, (*Reeve's Dom. Rel.* 278.) that the support to be furnished, by the father, is for four years, and *one half of the child-bed expenses.* The necessary assistance, at the birth of the child, as well as the expenses immediately after, and during the sickness attendant on the lying-in, indispensible as they may be to the life and health of the infant, are justly considered as falling within the term "maintenance." A rigid and literal construction of the statute, would lead the mind to a different result; but this law, like every other, must be expounded in reference to its manifest object. The cloathing of the child is requisite to the maintenance of it, in life and health; and the nursing and cloathing of the mother may be equally necessary, for the same reason. In the enquiry of fact, on this subject, great caution should be exercised, in the allowance of such expenditures as were undoubtedly necessary; but this is a jurisdiction, which is exclusively exercised by the county court, and not by this tribunal. I am aware, that in a neighbouring state, the lying-in charges, on the construction of a law, expressed in terms similar to ours, are not sanctioned; because in the fornication, the mother is *particeps criminis;* and the statute is considered as not having made any provision to relieve her from any expense she may incur on her own account. *The Commonwealth* v. *Cole,* 5 *Mass. Rep.* 518, 9. With the highest deference for the learned judge, who pronounced this opinion, I cannot subscribe to it. I cannot perceive, that the participation of the mother in a crime, mutually committed with the putative father, reflects any light on the construction of the statute; and although the mother is not relievable by law, from any expense incurred *on her own account;* yet her child must be maintained, and such allowances must be made as are indispensible to attain this object. If, through poverty and consequent nakedness, the health and welfare of the infant necessarily require, that adequate cloathing should be obtained for the mother, this is the maintenance of the child, in that liberal sense of the term, which embraces the usual lying-in expenses, within the same meaning. I have no doubt the necessary cloathing, whether of mother or child, as well as necessary board, physic and attendance, are equally within the authorized expenditures of the statute, of which the putative father must be subjected to a moiety.

*Fairfield,*
June,
1823.

Judson
*v.*
Blanchard.

HARVARD LAW LIBRARY

*Fairfield,*
*June,*
*1823.*

Judson
*v.*
Blanchard.

In conclusion, I think the determination of the county court legally correct, and would, therefore, affirm the judgment of the superior court.

The other Judges were of the same opinion.

Judgment affirmed.