KAREN FARADAY v. PAUL DUBE

LOISELLE, BOGDANSKI, LONGO, SPEZIALE and HEALEY, Js.

Argued February 9—decision released July 25, 1978

*Laurence Levine,* for the appellant (defendant).

*Jacob J. Goldman,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (plaintiff).

SPEZIALE, J. The sole issue raised on this appeal is whether, in a paternity action under General Statutes § 52-435a,[1] a person adjudged the father of a child may be held liable, under General Statutes § 52-442,[2] for the support of the mother while she is caring for the child.

[1] "[General Statutes] Sec. 52-435a. PETITION BY MOTHER OR EXPECTANT MOTHER. CONTINUANCE OF CASE. EVIDENCE. Proceedings to establish paternity of a child born or conceived out of lawful wedlock, including one born to, or conceived by, a married woman but begotten by a man other than her husband, shall be instituted by a verified petition of the mother or expectant mother, with summons and order, filed in the court of common pleas for the county or judicial district in which either she or the putative father resides. Upon the filing of such petition, said court or any judge assigned to said court shall cause a summons, signed by him or by the clerk or assistant clerk of said court, to be issued, requiring the putative father to appear in court at a time and place named therein to show cause, if any he has, why the prayer of such petition should not be granted. Such petition, summons and order shall be in a form approved by the judges of the court of common pleas. In the case of a child or expectant mother being supported wholly or in part by the state, service of such petition may be made by any investigator employed by the state welfare department. No such petition shall be brought after three years from the birth of such child, or after three years from cessation of contribution toward support of the child by the putative father, whichever is later; provided the provisions of section 52-590 shall be applicable to this section. If such putative father fails to appear in court at such time and place, the court may hear the petitioner and enter such judgment and order as the facts may warrant. Such court may order continuance of such hearing; and if such mother or expectant mother continues constant in her accusation, it shall be evidence that the respondent is the father of such child."

[2] "[General Statutes] Sec. 52-442. JUDGMENT AND ORDER OF COURT. If the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, and to pay a certain sum weekly until the child attains the age of eighteen years; and the court shall ascertain the expense of lying-in and of support and maintenance of the child until the time of rendering judgment, and order him to pay the amount thereof to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be, and shall grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable

The plaintiff, a minor, brought this action in the Court of Common Pleas through her mother, claiming that the defendant, also a minor, is the father of her child. After a trial to the court, the defendant was adjudged the father of the plaintiff's child and found liable for lying-in expenses and support and maintenance of the child. A judgment was rendered ordering the defendant to pay the commissioner of social services[3] the sum of $4177, representing the lying-in expenses and accrued support and maintenance costs, $250 as an attorney's fee, and $242.12 per month for future support of the child. Although the judgment did not specify the amount of support for the mother, the parties have stipulated that approximately half of the $242.12 monthly sum is allocable to the support of the plaintiff mother for the period during which she cares for the child. The

attorney's fee; and may require him to become bound with sufficient surety to perform such orders for support and maintenance and the expense of lying-in and to indemnify the state or the town chargeable with the support of such child from any expense for its maintenance. If he fails to comply with any such order, the court may commit him to a community correctional center, there to remain until he complies therewith; but, if it appears that the mother does not apply the weekly allowance paid by him toward the support of such child, and that such child is chargeable, or likely to become chargeable, to the town where it belongs, the court, on application, may discontinue such allowance to the mother, and may direct it to be paid to the selectmen of such town, for such support, and may issue execution in their favor for the same. The provisions of section 17-323a shall apply to this section. The clerk of the court which has rendered judgment for the payment of money for the maintenance of any child under the provisions of this section shall, within twenty-four hours after such judgment has been rendered, notify the selectmen of the town where the child belongs. Any order for the payment of support for any such child may at any time thereafter be set aside or altered by any court issuing such order. Failure of the defendant to obey any order for support made hereunder may be punished as for contempt of court and the costs of commitment of any person imprisoned therefor shall be paid by the state as in criminal cases."

[3] The plaintiff's mother, the plaintiff, and her child are all recipients of state aid. See General Statutes § 52-442, note 2, supra.

defendant appealed to the Appellate Session of the Superior Court, which found no error in the judgment of the Court of Common Pleas. Upon the granting of his petition for certification, the defendant appealed to this court.[4]

The portion of General Statutes § 52-442 relevant to this appeal reads as follows: "If the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, and to pay a certain sum weekly until the child attains the age of eighteen years; and the court shall ascertain the expense of lying-in and of support and maintenance of the child until the time of rendering judgment, and order him to pay the amount thereof . . . ." The issue presented by the parties here can be reduced to the following question: Do the words "support and maintenance" as employed in the statute encompass support for the caretaker mother as well as support for the child? We hold that they do.

This statute and its predecessors have long been subject to liberal construction by this court. For example, in *Comstock* v. *Weed*, 2 Conn. 155, 156 (1817), the applicable statute made the adjudged father of the child chargeable "with the *maintenance* thereof." Counsel for the mother argued (p. 157) that lying-in expenses were allowable under the

---

[4] At the time of the trial, the defendant, sixteen years of age and the oldest of six children, resided with his parents, who, because their income was below the established subsistence standard, received some public assistance from the city of Hartford. The defendant himself was unemployed and was ineligible for unemployment compensation. Nevertheless he was ordered to pay two dollars per week upon the judgment. His appeal to the Appellate Session claimed error in the ordering of such payments. This claim has been abandoned in the appeal to this court.

statute, either directly or by virtue of the fact that they were expenses "for the child, and a part of its maintenance." The court, *Swift, C. J.,* determined (p. 157) that lying-in expenses had always been allowed and found this to be the practical and reasonable construction of the statute. *Hosmer, J.,* considered that such expenses were "embraced in the expression 'shall stand charged with the maintenance' of the child," emphasizing his view that necessary assistance at the birth, being indispensable to the life of the infant, must be part of maintaining the child. Id., 159. Subsequently, in *Judson* v. *Blanchard,* 4 Conn. 557, 567 (1823), Chief Justice Hosmer restated his position and elaborated upon it: "The necessary assistance, at the birth of the child, as well as the expenses immediately after, and during the sickness attendant on the lying-in, *indispensible as they may be to the life and health of the infant,* are justly considered as falling within the term *'maintenance.'* A rigid and literal construction of the statute, would lead the mind to a different result; but this law, like every other, must be expounded in reference to its manifest object. *The cloathing of the child is requisite to the maintenance of it, in life and health; and the nursing and cloathing of the mother may be equally necessary, for the same reason.* In the enquiry of fact, on this subject, great caution should be exercised, in the allowance of such expenditures as were undoubtedly necessary; but this is a jurisdiction, which is exclusively exercised by the county court, and not by this tribunal. . . . [A]lthough the mother is not relievable by law, from any expense incurred *on her own account;* yet her child must be maintained, and such allowances must be made as are indispensible to attain this object. If, through poverty and conse-

quent nakedness, the health and welfare of the infant necessarily require, that adequate cloathing should be obtained for the mother, this is the maintenance of the child, in that liberal sense of the term, which embraces the usual lying-in expenses, within the same meaning. I have no doubt the necessary cloathing, whether of mother or child, as well as necessary board, physic and attendance, are equally within the authorized expenditures of the statute . . . ." (Emphasis added.)

The legislature is presumed to act with awareness of long-standing judicial construction of a statute or a statutory provision. *Bahre* v. *Hogbloom,* 162 Conn. 549, 558, 295 A.2d 547 (1972); *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968). The history of judicial interpretation of the Connecticut paternity statutes reflects the propensity of this court to construe liberally the term "maintenance" so as to carry out the underlying purpose of the legislation and assure that the child is well provided for. Cf. *Bahre* v. *Hogbloom,* supra. The most recent amendment to General Statutes § 52-442, in 1959, in no way indicates any legislative intention to curtail the broad construction given to the term "maintenance."[5]

We therefore hold that the words "support and maintenance," as used in the present statute, must be construed to encompass all expenses necessary to

[5] The principal changes made in 1959 (Public Acts 1959, No. 639, § 1) were to make the father liable for "support and maintenance" rather than simply "maintenance"; to make the mother's assistance depend on her financial ability; to require payment until the child reaches the age of 18, rather than leaving it to the discretion of the court; and to make the father responsible for all, rather than half, the expenses accrued up to the time of judgment. See footnote 2, supra.

maintain the child in life and health; see *Judson* v. *Blanchard,* supra, 567; whatever the court might determine these expenses to be. Because a young child is incapable of caring for itself, preserving its life and health will frequently entail some caretaker expenses. Clearly, it is well within the court's authority, under the statute, to order the adjudged father to pay for—or contribute to—child care expenses. If it is the mother who is caring for the child, and the welfare of the child is potentially endangered by the mother's inability to support herself, the court similarly has the authority under the statute to order the father to contribute to the support of the caretaker mother. The mother's right to support, unlike alimony, is not a personal right; she is entitled to support only to the extent that it is *necessary for the "support and maintenance" of the child.* See *Judson* v. *Blanchard,* supra, 567.

The trial court must determine whether, under the particular circumstances of the case, it is necessary for the proper maintenance of the child that the father contribute toward the support of the mother. See *Judson* v. *Blanchard,* supra; *Peterson* v. *Norton,* 395 F. Sup. 1351, 1355 (D. Conn. 1975). If in its sound discretion the court so decides, then such costs are properly includable in the weekly sum which the court orders the father to pay for support and maintenance of the child. See *Hellman* v. *Karp,* 93 Conn. 317, 324, 105 A. 678 (1919). Should circumstances change, there is ample provision in the statute for the court to modify its order.

We hold that under General Statutes § 52-442 a person adjudged to be the father of a child may, within the sound discretion of the trial court, be

charged with the support of the caretaker mother when such is found to be necessary for the proper maintenance of the child.

There is no error.

In this opinion the other judges concurred.