[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contested paternity action which raises the issues over the time period a child support order can be made retroactive against the father, the applicability of the child support guidelines, and whether assets of an irrevocable trust created by the father naming himself as beneficiary can be reached to compel payment of support obligations.
This action was commenced by the State of Connecticut on January 30, 1987 under section 46b-162 of the General Statutes to recover payments made for state assistance furnished by it. The State furnished assistance between May 13, 1986 and November 30, 1987 in the amount of $7,253.14. The State and the child's mother, Tara Wheaton, claimed that the defendant Stephen Gagliardi was the father of Stephanie Wheaton, born to Tara Wheaton on March 9, 1986. Tara Wheaton later retained her own attorney, and her motion to intervene and be joined as a party plaintiff has been granted by the court. At a hearing on the paternity petition on June 29, 1990, Tara Wheaton testified that she had sexual relations CT Page 851 with the defendant three times in 1985, and no sexual relations with anyone else. The defendant claimed that he ceased having sexual relations prior to April 1985 and that the complainant had told him that she had relations with another man. Unlike other areas of the law, where two persons may have joint and several liability, [e.g. Section 42a-3-414
C.G.S. — where the maker cannot be found, the endorser may be liable], there can only be one father of a child, and the defendant is it. This was confirmed by blood tests taken pursuant to section 46b-168 of the General Statutes, which showed that there was over 99% certainty that the defendant was the father. See Moore v. McNamara, 201 Conn. 16, 32, 33. On June 29, 1990, the court determined that the plaintiffs had shown, by clear and convincing evidence, even though only proof by a fair preponderance of the evidence was required, Lavertue v. Niman, 196 Conn. 403, 407, that the respondent, Stephen Gagliardi is the father of the child.
The case was continued to July 23, 1990 for a hearing on the amount of support and related orders. The parties presented a stipulation of facts and agreed to submission in evidence of copies of certain tax returns of the defendant and a trust which he created for his own benefit, and a copy of an irrevocable Trust Agreement dated September 14, 1985. An initial question in the dispute between the parties over the financial responsibilities of the defendant turns upon to what extent and for what time period the court can order reimbursement of the State and Tara Wheaton for past support payments for the child.
The controlling statute, section 46b-160 of the General Statutes has been amended several times, including an amendment by P.A. 89-360, effective July 1, 1989, when this action was pending in court. Section 44 of P.A. 89-360 provides in part that liability for past support in a paternity proceeding "shall be limited to the three years next preceding the date of the filing of" a petition to determine paternity (emphasis added). Prior to July 1, 1989 section 46b-160 limited liability for past support to a period of three years prior to the granting of the petition. The defendant claims that this precludes an award of past support prior to June 30, 1987, since the petition was not granted until June 29, 1990. This interpretation would eliminate the State's right to recover over half the assistance it furnished, even though and a trust which he created for his own benefit, and a copy of an irrevocable Trust Agreement dated September 14, 1985. An initial question in the dispute between the parties over the financial responsibilities of the defendant turns upon to what extent and for what time period the court can order CT Page 852 reimbursement of the State and Tara Wheaton for past support payments for the child
The controlling statute, section 46b-160 of the General Statutes has been amended several times, including an amendment by P.A. 89-360, effective July 1, 1989, when this action was pending in court. Section 44 of P.A. 89-360 provides in part that liability for past support in a paternity proceeding "shall be limited to the three years next preceding the date of the filing of" a petition to determine paternity (emphasis added). Prior to July 1, 1989 section 46b-160 limited liability for past support to a period of three years prior to the granting of the petition. The defendant claims that this precludes an award of past support prior to June 30, 1987, since the petition was not granted until June 29, 1990. This interpretation would eliminate the State's right to recover over half the assistance it furnished, even though the defendant argued that it could not be applied retroactively and that the support claim was barred by the former three year statute of limitations. On appeal the Supreme Court concluded that the obligations of a father to support a minor illegitimate child is derivatively based upon the common law, and that the paternity statute is no longer the sole basis for a paternity action. The court stated:
 "The statute of limitations it contains is not substantive or jurisdictional, but rather procedural or personal. It follows that such a statute of limitations may properly be applied retroactively absent the clear expression of a contrary legislative intent, unless considerations of good sense and justice dictate otherwise. No such contrary intent appears either in the wording of the amended statute, or in the proceedings that disclose its legislative history. Nor does it appear that retroactive application of the new statute of limitations would work an injustice to the defendant." Id., 25.
A similar result was reached by the Appellate Court in Swett v. Martin, 9 Conn. App. 327, 329 (1986). There is no sound reason for concluding that the latest amendment to the statute in 1989 does not apply to this action even though it was passed after the action was commenced. The latest amendment to the time limits in section 46b-160 are also procedural, and therefore may be applied retroactively unless there is clear legislative intent to the contrary, Moore v. McNamara, supra, 22, 25, which the court cannot find here.
The liability for support of the child by its father CT Page 853 accrues upon the birth of the child, and a construction should not be needlessly placed on the statute to negate this obligation. Allowing the support obligation to only go back three years from the final decision on the paternity question encourages procrastination by a defendant in acknowledging paternity and delaying tactics in a pending paternity action. In fact that appears to have been the defendant's approach here. Determining the obligation for past support based upon the prior version of section 46b-160
would benefit the defendant, who has avoided paying support since the birth of the child, and penalize the State, which was fairly prompt in commencing this proceeding. The apparent purpose of the 1989 amendment was to prevent delays in scheduling a paternity action for trial from lessening the father's support obligation.
Statutes providing for parental support and maintenance are to be broadly construed, Jones v. Jones, 199 Conn. 287,291, and paternity statutes are to be liberally construed to assure that the child is well cared for. Guille v. Guille,196 Conn. 260, 266; Faraday v. Dube, 175 Conn. 438, 443. In this case the mother was unable to support the child initially and had to be supported by the State for a year and a half. The 1989 amendment to the statute applies and the defendant is responsible for past support commencing three years prior to the date of filing of the petition, which in this case means support from the date of birth of the child.
In order to resolve the amount of a support order, and the items that may be charged to the defendant, the statute concerning support guidelines and several amendments to section 46b-171 of the General Statutes must be considered. Section 46b-171, as amended by P.A. 89-360, section 42, and P.A. 90-188, section 3, provides in part: "If the defendant is found to be the father of the child, the court . . . shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able." Payments are "to be reasonably commensurate with the financial ability of the defendant" to pay support until the child reaches the age of eighteen years. Support is required to be paid under section 46b-171
to the complainant, or if the State has paid support and maintenance, to it. Costs of suit are allowed "as in other civil actions, together with a reasonable attorney's fee." The statute has always allowed reimbursement to the State for any sums which it has paid on behalf of the child.
The 1989 amendment to section 46b-171 deleted the phrase from the statute that the court shall "ascertain the expense of lying-in and of support and maintenance of the child until CT Page 854 the time of rendering judgment" and order the defendant to pay that amount to the complainant or the state, if it has paid those expenses. In Donato v. Corrado, 22 Conn. App. 583, 585n the Appellate Court indicated that this amendment was to be applied prospectively only, so that the requirement deleted by the 1989 amendment still applied to actions commenced prior to July 1, 1989. This also shows legislative intent that the defendant can be held responsible for all past support expenses under the facts of this case. Sections46b-160 and 46b-171 considered together allow the plaintiffs to obtain an order to reimburse them for past support and maintenance. The next issue is the effect of the support guidelines on the amount of payments for past support and orders for future support.
Another governing statute is P.A. 89-203, section 2, which provides that the child support guidelines "shall be considered in all determinations of child support amounts within the State. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered." The same Public Act provides that the support guidelines do not have to be followed where it is inequitable or inappropriate in a particular case, and that in any proceeding for the establishment or modification of a child support award, the child support guidelines shall be considered in addition to and not in lieu of the criteria for support awards in other specified sections of the General Statutes, which includes section 46b-171.
It is clear from considering the language of these statutes, that their clear intent would be to govern any support orders made after they were passed, even though a paternity action (or dissolution proceeding) may have started before the statutory amendments. P.A. 90-188, section 3 in fact allows a motion for modification of a support order if the order substantially deviated from the child support guidelines in P.A. 89-203, unless there was specific finding on the record that the guidelines would be inequitable or inappropriate.
Both parties have filed financial affidavits. The net weekly earnings of Tara Wheaton are $234.98. The defendant's affidavit shows gross weekly wages of $358.20 and weekly net income of $280.80. His affidavit shows that assets of less than $5,000, and does not include his interest as beneficiary under the irrevocable Trust which he himself established on September 14, 1985. CT Page 855
When the Trust was started the corpus was over $100,000. On April 1, 1990 it was $155,531.63. On May 7, 1990 the defendant withdrew $90,072 from the Trust account by transfer to another account, and the corpus of the Trust was reduced to $56,672.70 as of May 31, 1990. For the four previous years the net income, after payment of taxes and expenses of the Trust was about $10,000 per year, as shown by the fiduciary tax returns, except for 1989 when it was $12,900. The defendant claims he did not receive any of the Trust income. He claims that the $92,072 withdrawn from the Trust was used to pay back his father for a note to cover education expenses because the defendant is not completing his college education. His financial affidavit shows a "Note for Education" of only $85,000, which has been crossed out on the affidavit before it was signed.
The court does not find the defendant's testimony to be credible. While the trustee has broad discretion under the terms of the trust to make payments on behalf of the defendant, the numerous purposes for which payments can be made by the trustee do not expressly include payments of loans or claims against the beneficiary. The trustee was not a witness at the trial. No note for $85,000 was produced as an exhibit. If the defendant received $85,000 from his father, and it was not used by the defendant for his college education, there was no explanation where the money went. If the funds went into an irrevocable trust they would not be a loan. The withdrawal from the trust occurred when this paternity action was about to be tried, and when the defendant knew a claim was being made to a portion of the Trust assets. This coupled with the fact that the payment may be improper under the Trust instrument, shows that the purpose of the withdrawal was to reduce the funds available to satisfy the plaintiffs' claim. At the time the funds were withdrawn from the Trust the defendant knew about the blood test results, namely that the likelihood of paternity was over 99% and that the plaintiffs would prevail in this action. The plaintiffs have shown by clear and convincing proof that the withdrawal of the funds from the Trust account was made with fraudulent intent to avoid having the Trust assets available to satisfy the defendant's legal obligations to support the child. No determination is made at this time whether the principal of the trust is an asset which may be reached by creditors. Even if it is, and even though a transfer of assets made after notice of an actual or imminent action seeking support may be found to be fraudulent and set aside, Molitor v. Molitor, 184 Conn. 530, 534, neither the Trustee or the defendant's father are parties to this action, and the complaint does not request that the conveyance be set aside as fraudulent, so these issues will CT Page 856 not be decided in this proceeding.
P.A. 89-203, section 2 and section 46b-171, as amended, considered together, require the support guidelines to be followed unless the court determines that it is inequitable or inappropriate to follow them and a finding is made on the record to that effect. Absent a finding, the support order cannot "substantially deviate" from the guidelines. See P.A. 90-188, section 3, amending section 46b-171.
If the defendant's affidavit is taken at face value, his current portion of a child support order would be $67.10 per week under the child support guidelines.
There are several reasons why it is both inequitable and inappropriate for the defendant here to require a computation based upon net disposal income of $280.80 per week. A parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability. Sections 46b-171 and 46b-215 C.G.S.; Pezas v. Pezas,151 Conn. 611, 616; Weisbaum v. Weisbaum, 2 Conn. App. 270, 272,273. A support order takes into account what the parent can afford to pay. Timm v. Timm, 195 Conn. 202, 207; Main v. Main, 17 Conn. App. 670, 676. The child support guidelines no doubt take into account the customary living and related expenses of the two parents of a child. The defendant resides with his parents and the court believes that his weekly expenses are exaggerated. While the Trustee of the Trust is not required to pay periodic income from it to the defendant, and apparently has not been doing so, the Trustee can make payments, within his discretion, for the defendant's maintenance, support, reasonable comfort and for any other purpose which is in the best interest of the beneficiary under section 1.2 of the Trust Agreement. Moreover, until the questionable withdrawal of $92,072 from the principal of the Trust on May 7, 1990, the Trust was generating over $10,000 per year in income. Since the defendant was the settlor of the Trust, it cannot be used to insulate him from claims of his creditors, Greenwich Trust Co. v. Tyson, 129 Conn. 211,219, 222, which would include the plaintiffs in this case. A party cannot claim inability to pay child support where the inability of the defendant to pay is due to his own fault. Hollings v. Milde, 38 Conn. Sup. 500, 502; Sanchione v. Sanchione, 173 Conn. 397, 407. The reduction in the principal of the Trust, and therefore its ability to generate future income, resulted from the defendant's request for payments from the Trust principal. The defendant should not be able to benefit by purposefully divesting himself of his assets, even though they are ostensibly under the control of a trustee. Finally, the court believes that the defendant's CT Page 857 earning capacity is somewhat higher than his actual current earnings. Child support awards can be based on earning capacity rather than actual current earnings in a proper case. Hart v. Hart, 19 Conn. App. 91, 94, 95.
After considering all the evidence the defendant is ordered to pay the sum of $110.00 per week (or $5,720.00 per year) as child support. After this relatively modest payment he will still receive adequate funds to meet his personal expenses.
While the State was providing exclusive support for the child, it paid Tara Wheaton $407 per month, and these payments continued until November 30, 1987. The arrearage owed the State is $7,253.14. From November 30, 1987 until September 1, 1989 support was provided by the plaintiff's father, Wesley C. Wheaton, and Tara Wheaton has agreed to repay that support from any recovery in this case. The amount claimed, computed at the rate of $407.00 per month, is $8,500.00 from the period between November 30, 1987 until September 1, 1989. This amount is found to be reasonable. Support is also ordered at the rate of $110.00 per week from September 1, 1989 to August 16, 1990 in the amount of $110.00 per week or $5,500.00. Accordingly, the defendant is directed to pay $14,000.00 to Tara Wheaton for past support.
Section 46b-171 allows a plaintiff in a paternity action a reasonable attorney's fee. This has been a contested matter and a statement has been submitted by the petitioner's attorney requesting attorney's fees in the amount of $3,994. The court finds this amount to be fair and reasonable. The defendant is directed to pay that amount to the plaintiff Tara Wheaton for her attorney's fees, and to pay the State $15.00 for the cost of service of the petition. An immediate wage garnishment in the amount of $110.00 per week is issued against the defendant's wages from his employer.
In Greenwich Trust Co. v. Tyson, supra, it was held that the income of a trust which created by a settlor for his benefit is subject to claims of creditors up to the maximum amount of the trustee could pay him or apply his benefit. See also Cantor v. Department of Income Maintenance,40 Conn. Sup. 554, 558; Restatement (Second), Trusts, section 156(2). Whether the creditor can also reach the principal of the trust was specifically not decided by the court in Greenwich Trust v. Tyson, supra, 225. Since this action was only to establish the extent of the defendant's obligation to pay support, and not to collect the amount of the debt, no order will be entered at this time for an execution or similar CT Page 858 order against the income or principal of the trust, without prejudice to the plaintiff's rights to pursue legal and equitable remedies if the judgment is not paid.
Judgment may enter accordingly.
ROBERT A. FULLER, JUDGE