[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The state of Connecticut initiated an action pursuant to General Statutes § 46b-162 against the defendant on November 10, 1997, to establish paternity and for an order of child support for the minor children of the plaintiff. On March 3, 1998, in a hearing held before a family support magistrate in the absence of the defendant[1], the defendant was found to be the father of the minor children, Jada F. Smith and Carleton Smith, both born to the plaintiff on November 14, 1994. The state offered testimony that the children were receiving state assistance pursuant to the Aid to Families with Dependent Children (AFDC) Program. Information regarding the wages and work history of the defendant was unknown. The state requested an order based on the full state assistance paid for the support of the children and the plaintiff for both current and past child support.
The magistrate, however, declined to order child support based upon the full grant. Specifically, it was determined that the plaintiff receives state benefits for the two minor children in the amount of $125.40 per week, and that $86.60 per week of that amount represented the children's share of the grant. An arrearage was found in the amount of $18,316.40, with the children's share of that amount determined to be $11,960.18. The magistrate entered orders by default based upon the cost to the state for the support of the two minor children. These orders CT Page 8476 were predicated on the children's share of the state grant, and not the full assistance paid by the state, for both current and past child support. The magistrate also issued a wage withholding order effective upon notice to the defendant.
The state took exception to the magistrate's orders and the magistrate made the March 3, 1998, orders temporary. The case was continued until March 17, 1998, at which time a hearing was held. At the hearing the magistrate decided not to change her original orders and ruled that the orders based upon the children's share only were proper under General Statutes § 46b-215. The temporary orders of March 3, 1998 were made permanent.
The state now appeals the decision of the magistrate pursuant to General Statutes § 46b-231 (n). The state claims that it was contrary to the law for the magistrate to base the child support and arrearage upon the children's share only and that it was error for the magistrate to not sign the income withholding order and to make it effective upon notice to the defendant. The court agrees.
General Statutes § 46b-231 (n)(1) provides that "[a] person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section." The magistrate's decision in this case presents a judgment or decision from which an appeal can be taken.
The test for determining whether a claimant is aggrieved by a particular decision is two-fold: (1) the party claiming to be aggrieved must have a specific, personal and legal interest in the subject matter of the decision, and (2) the party must show that this personal and legal interest has been specially and injuriously affected by the decision. Newman v. Newman,235 Conn. 82, 103, 663 A.2d 980 (1995). The court finds that the state is aggrieved for the purposes of this appeal because the magistrate's decision has the effect of denying the state full reimbursement for support paid on behalf of the minor children and the plaintiff. Additionally, the failure to issue a wage withholding order effective immediately could have the effect of increasing the arrearage, thereby necessitating additional court dates and costs to the state.
Additionally, the court finds that the decision of the magistrate constitutes a final judgment for the purposes of appeal. CT Page 8477
The appeal was submitted in a timely manner, within fourteen days of the decision being appealed. Counsel certified that service of the appeal upon the pro se party and the office of the Attorney General was made in accordance with General Statutes § 46b-231 (n)(2) by certified mail. Transcripts were filed along with the magistrate's decision, and no additional evidence has been submitted. The appeal is properly before the Court.
The operative statute for ordering child support when a non-custodial parent fails to appear is General Statutes §46b-215. This statute provides in relevant part that: "With respect to such orders entered into on or after October 1, 1991, if no information is available to the court concerning past ability to pay, the court may determine the support due for periods of time prior to the action as if past ability to pay is equal to current ability to pay if known or, if not known,based upon assistance rendered to the child. Any finding as support due for periods of time prior to the action which is made without information concerning past ability to pay shall be entered subject to adjustment when such information becomes available to the court." (Emphasis added.) General Statutes §46b-215.
The state argues that the magistrate narrowly construed the words "assistance rendered to the child" and improperly ordered current child support based only upon the children's portion of the grant and improperly made that the basis for the arrearage calculation. The state relies on a number of cases wherein it was held that a father may be liable for the costs of maintenance of the mother, caretaker, and children who receive AFDC benefits. The state argues that it was an abuse of discretion for the magistrate to exclude the caretaker's share from its orders.
The court has found no decisional law construing the words "assistance rendered to the child" as used in § 46b-215, and the legislative history does not illuminate the point. Courts have addressed the issue, however, of whether the words "support and maintenance of a child" as used in General Statutes §46b-171 encompass the support of the caretaker mother as well as support for the child. Section 46b-171 sets forth the child support obligations of a defendant adjudicated to be the father of the child.
In Faraday v. Dube, 175 Conn. 438, 439, 399 A.2d 1262 (1978), CT Page 8478 the issue before the court was whether a person adjudicated to be the father of a child may be held liable under General Statutes § 52-442, currently § 46b-171, for the support of the mother while she is caring for the child. Section 46b-171
provides in relevant part that "[i]f the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child . . ." The issue was whether the words "support and maintenance" as employed in the statute include support for the caretaker mother as well as support for the child. The Supreme Court held that the statute "must be construed to encompass all expenses necessary to maintain the child in life and health . . . Because a young child is incapable of caring for itself, preserving its life and health will frequently entail some caretaker expenses" and, therefore, it is within the sound discretion of the trial court to charge a person adjudged to be the father of a child with the support of the caretaker mother. Faraday v. Dube, supra, 443-44.
In Castellani v. Criscuolo, 39 Conn. Sup. 485, 487,466 A.d 812 (Appellate Session 1983), the state sought reimbursement from the defendant for amounts paid for the support and maintenance of the child and of the plaintiff pursuant to the Aid to Families with Dependent Children (AFDC) program. The court ordered the defendant to pay an amount representing the sum expended for the support of the child, but declined to order reimbursement for the sums paid on account of the support of the mother, and the state appealed.
In rendering its decision, the Appellate Division relied on the case of Rodriguez v. Vowell, 472 F.2d 622, 624-25 (5th Cir.), cert. denied, 412 U.S. 944, 93 S.Ct. 2777, 37 L.Ed.2d 404 (1973). In that case, the court stated that "[t]he plain language of the Social Security Act, its legislative history, and the relevant decisional precedent make clear that the needs of the caretaker relative, as well as those of the dependent child are to be considered in deciding if a family is eligible for an AFDC grant. Recognizing the inseparability of the needs of the child from the needs of the relative with whom the child is living, § 401 of the Act [42 U.S.C. § 601] emphasizes that the purpose of the AFDC program is to help the child by preserving and strengthening the family entity. Congress appreciated that granting aid to the dependent child alone would not fully meet the child's need for care and therefore required that the caretaker be a relative of a specified degree so that the caretaker would have a natural concern for the child's welfare . . . Thus, in measuring the CT Page 8479 need, the need of the family unit is the question, not the need of the child alone; for the goal of strengthening the family entity can only be achieved if the needs of the caretaker relative are included in determining eligibility." Id.
Accordingly, the court in Castellani v. Criscuolo, supra, 39 Conn. Sup. 489-90, held that "the fact that the plaintiff was found to be eligible for AFDC benefits, in and of itself, created a presumption that her support was necessary for the proper maintenance of her child. It is well recognized that the words support and maintenance, as employed in § 46b-171 encompass support for the caretaker mother as well as support for the child when such support is necessary for the proper maintenance of the child and the welfare of the child is potentially endangered by the mother's inability to support herself . . . Accordingly, unless the defendant can rebut the presumption that the AFDC benefits paid to the plaintiff were necessary for the proper care and maintenance of the child, he is liable as well for those amounts." (Citations omitted.)
A similar issue was presented to the court in Miller v.Neistat, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 354343 (April 6, 1992) (Norko, J.) (6 CONN. L. RPTR. 249). In that case, the court found the defendant liable for the costs of maintenance of the mother and daughter while on AFDC. See also Allen v. Hill,36 Conn. Sup. 504, 411 A.2d 947 (Appellate Session 1979).
"Statutes are to be construed consistently with other relevant statutes, because we presume that the legislature intended to create a coherent body of law . . ." (Citations omitted; internal quotation marks omitted.) In Re Bruce R.,234 Conn. 194, 207, 662 A.2d 107 (1995). Furthermore, it is well established that "statutes providing for parental support and maintenance of minor children are to be broadly construed." Jonesv. Jones. 199 Conn. 287, 291, 507 A.2d 88 (1986). In the present case, the state sought reimbursement for the full amount of the AFDC assistance paid on behalf of the minor children and plaintiff caretaker. The appellate courts of this state have recognized that because the purpose of the AFDC program is to help the child by strengthening the family entity, the need of the family unit and not the need of the child alone is considered in determining need and eligibility under the program. SeeFaraday v. Dube, supra, 175 Conn. 443-44; Castellani v.Criscuolo, supra, 39 Conn. Sup. 489-90. Thus, the needs of the CT Page 8480 caretaker relative are included in determining eligibility and, therefore, the provision requiring a person adjudicated to be the father of a child to provide for the support and maintenance of that child includes support for the caretaker relative as well. These needs of the caretaker are inseparable from the needs of minor children who are incapable of taking care of themselves.
Based on the foregoing, the court finds that the language of46b-215 requiring that support due be based upon "assistance rendered to the child" when a defendant's current and past ability to pay are unknown, includes assistance expended for the support of the caretaker of that child. Accordingly, the court finds that the magistrate erred when she excluded the caretaker share of the state grant from her support orders. The decision of the magistrate is reversed and the case is remanded to the magistrate for orders not inconsistent with this opinion.
The state also argues that the magistrate erred in not signing an income withholding order. Specifically, the state argues that pursuant to General Statutes § 52-362 (b), an income withholding order is to be issued effective immediately, even when a defendant is not present, and notice is to be given to the defendant subsequent to the order. Therefore, according to the state, the magistrate erred in making the order effective upon notice to the defendant.
General Statutes § 52-362(b), as amended by Public Acts 1997, No. 97-7, § 28, provides in relevant part that: "The Superior Court and any family support magistrate shall issue an order for withholding pursuant to this section against the income of an obligor to enforce a support order when the support order is entered or modified or when the obligor is before the court in an enforcement proceeding. The court shall order the withholding to be effective immediately or may, for cause or pursuant to an agreement by the parties, order a contingent withholding to be effective only on accrual of a delinquency in an amount greater than or equal to thirty days' obligation. Any finding that there is cause not to order withholding to be effective immediately shall be based on at least (1) a written determination that, and explanation by the court or family support magistrate of why, implementing immediate income withholding would not be in the best interests of the child, and (2) proof of timely payment of previously ordered support in cases involving the modification of such support . . . If the court or family support magistrateissues an order for withholding to be effective immediatelyCT Page 8481against a nonappearing obligor, notice shall be servedsubsequently upon the obligor in accordance with section 52-57 or sent by certified mail, return receipt requested, to the obligor's last known address, informing him: (A) that a support order has been issued to be enforced by an income withholding order, (B) that an income withholding order has been issued effective immediately as part of the support order, (C) of the minimum amount of income exempt from withholding under state and federal law and of his right at the hearing on the support order to claim any other applicable state or federal exemptions with respect thereto, (D) of his right to a hearing, upon motion to the court, to offer any evidence as to why the withholding order effective immediately should not continue in effect, (E) of the amount of income received by him which formed the basis for the support order against him. and (F) of his right to move to modify the support order if his income has changed substantially or if the support order substantially deviates from the child support guidelines established pursuant to section 46b-215a." (Emphasis added.)
The legislative history of General Statutes § 52-362(b) is instructive as to the purpose and intent of the statute. Acting Attorney General Clarine Nardi Riddle testified before the judiciary committee that "[i]n 1988, Congress passed the Family Support Act of 1988. The provisions of the law relating to child support, among other things, require that the states garnish an absent parent's wages whether or not the parent is in arrears unless the judge or magistrate finds good cause not to require an immediate withholding or a written agreement between the two parties provides for an alternate arrangement. Congress felt that by requiring all support orders to be enforced by wage withholding, eventually such withholding will be considered as routine as withholding for social security or income tax liability." Conn. Joint Standing Committee Hearings, Judiciary Committee, Pt. 3, 1989 Sess., p. 765. "The reason for the high priority given to child support collection is not merely to repay the state for AFDC benefits but to provide financial stability to the custodial parent and the child and to make the family financially self-sufficient." Conn. Joint Standing Committee Hearings, Judiciary Committee, Pt. 3, 1989 Sess., p. 840. The "wage orders and garnishments and support matters are automatic. . . ." 32 S. Proc., Pt. 12, 1989 Sess., p. 3948-49, remarks of Senator Avallone. See also 32 H.R. Proc., Pt. 21, 1989 Sess., p. 7456, remarks of Representative Tulisano (explaining that "there will be an automatic order of wage withholding"). CT Page 8482
It was further explained that "[u]nder the existing statute the garnishment may be immediate or contingent. A contingent garnishment is not an effective enforcement tool. It causes financial hardship for the custodial parents and their children and it creates [additional] work for support enforcement officers. It gives the obligor a [chance] to make payments on his own if he becomes delinquent, as you've already heard today, in an amount equal to 30 days. He must be served with notice before garnishment can be activated. This notice can be through certified mail with a return receipt requested or through personal service. Obviously, the kind of a parent who will not support his child will make a concerted effort to avoid being served with a delinquency notice. Often months go by before service can be completed. By the time a garnishment is in place, a sizeable arrearage has accrued which necessitates an additional court date to find the arrearage and set up a pay plan on it." Conn. Joint Standing Committee Hearings, Judiciary Committee, Pt. 2, 1989 Sess., p. 737, remarks of Patricia Caputo, president of Parents for Enforcement of Court Ordered Support. See alsoEmerick v. Emerick, 28 Conn. App. 794, 804, 613 A.2d 1351, cert. denied, 224 Conn. 915 (1992) (holding that "the issuance of a wage execution is mandated by General Statutes § 52-362 (b)).
The Connecticut Supreme Court adheres to the principles of statutory construction, where "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)State v. Wilson, 242 Conn. 605, 611, 700 A.2d 633 (1997). When construing statutes, the courts will "avoid constructions that lead to absurd, unworkable or bizarre results." (Internal quotation marks omitted.) Konover v. West Hartford,242 Conn. 727, 743, 699 A.2d 158 (1997). Furthermore, the Supreme Court has held that "[i]f the statutory language . . . is clear and unambiguous . . . courts cannot, by construction, read into such statutes provisions which are not clearly stated." (Internal quotation marks omitted.) Iovieno v. Commissioner of Correction,242 Conn. 689, 670, 699 A.2d 1003 (1997).
The plain language of § 52-362 (b) mandates that a magistrate order the wage withholding effective immediately, CT Page 8483 unless the magistrate finds good cause or there is an agreement between the parties. In the present case, cause was not found to make the order contingent and there was no agreement between the parties. Thus, the magistrate was required to issue the wage withholding order effective immediately. The statute further provides that in the case of a nonappearing defendant, the order must still be issued effective immediately, and notice is to be given subsequently to the defendant. To require that notice be given prior to implementing the order contradicts the plain language of the statute, as it further states that a defendant may move the court for a hearing and offer evidence as to why the order, effective immediately, should not continue. Finally, as the legislative history indicates, the intent of the statute and of Congress was to make such orders automatic.
Accordingly, the court finds that the magistrate erred in failing to sign the wage withholding order and in making it effective only upon notice to the defendant, and that the magistrate's order prejudiced substantial rights of the appellant. The decision of the magistrate as to the wage withholding order is reversed and the matter is remanded to the magistrate for entry of an order not inconsistent with this opinion.
Bishop, J.