FEDERAL AVIATION ADMINISTRATION, UNITED STATES
DEPARTMENT OF TRANSPORTATION *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT, ET AL.
(12521)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued April 4—decision released June 25, 1985

*John J. Markunas, Jr.,* general attorney, Federal Aviation Administration, with whom were *Leslie C. Ohta,* assistant United States attorney, and, on the brief, *George L. Thompson, Alan H. Nevas,* United States attorneys, and *Robert A. Brooks,* assistant United States attorney, for the appellant (plaintiff).

*Thadd A. Gnocchi,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attor-

ney general, and *Robert E. Walsh* and *Charles A. Overend,* assistant attorneys general, for the appellee (named defendant).

*Jonathan L. Gould,* with whom, on the brief, was *James L. Kestell,* for the appellees (defendant Denise Douglas et al.).

CALLAHAN, J. This is an appeal from the judgment of the trial court dismissing an employer's appeal from a grant of unemployment compensation benefits to its employees. The facts as found by the employment security division board of review (hereinafter board) are not disputed in this appeal. The defendant claimants were air traffic controllers employed by the plaintiff federal aviation administration (hereinafter FAA). They were discharged from their employment for participation in a nationwide strike of air traffic controllers that commenced on August 3, 1981. The defendants were terminated for being absent from their posts without leave during the strike and for participation in the strike in violation of their oaths and federal statutes.

Subsequent to their termination from federal service, the defendants filed for, and were allowed Connecticut unemployment compensation benefits by the defendant administrator of the Connecticut unemployment compensation commission (hereinafter administrator). The FAA filed a timely appeal from that decision to the employment security appeals division. The board of review, acting on its own motion and pursuant to General Statutes § 31-248a, transferred the case to itself and assumed jurisdiction. A de novo evidentiary hearing was held on March 18, 1982, and by decision dated June 14, 1982, the board upheld the decision of the administrator to grant unemployment compensation benefits to the defendants. In the plaintiff's subsequent administrative appeal to the Superior Court, the trial court agreed with the board of review.

The determinative issue on this appeal, as it was in the administrative proceedings before the board of review, is the interpretation of General Statutes § 31-236 (2) (B). In August of 1981, this statute provided in pertinent part: "An individual shall be ineligible for benefits . . . if, in the opinion of the administrator, he has been discharged or suspended for felonious conduct or repeated wilful misconduct in the course of his employment . . . ."[1] The board found that the defendants were discharged for wilful misconduct in the course of their employment. The board, however, concluded that the defendants' continued and voluntary absence from work on and after August 3, 1981, was not *repeated* wilful misconduct which would have disqualified them for benefits under General Statutes § 31-236 (2) (B). The board apparently reasoned that failure to report to work, though on successive days, was a single act. Our disposition of this appeal makes it unnecessary to consider further this conclusion of the board.

The board also found that participation by the defendants in a strike against the United States government was in fact and in law felonious conduct and that the defendants were discharged for felonious conduct in violation of 18 U.S.C. § 1918.[2] The board, noting that

---

[1] General Statutes § 31-236 (2) (B) was amended by Public Acts 1982, No. 82-262, and now reads in pertinent part: "An individual shall be ineligible for benefits . . . if, in the opinion of the administrator, he has been discharged or suspended for felonious conduct . . . repeated wilful misconduct in the course of his employment, or participation in an illegal strike as determined by state or federal laws or regulations . . . ."

[2] Title 18 U.S.C. § 1918 reads in pertinent part: "Whoever violates the provision of Section 7311 of Title 5 that an individual may not accept or hold a position in the Government of the United States . . . if he—

"(3) participates in a strike, or asserts the right to strike, against the Government of the United States . . . shall be fined not more than $1,000 or imprisoned no more than one year and a day, or both."

Title 18 U.S.C. § 1 reads in pertinent part: "Notwithstanding any Act of Congress to the contrary:

"(1) Any offense punishable by death or imprisonment for a term exceed-

the felonious conduct provision of General Statutes § 31-236 (2) (B) is of recent vintage and that prior cases it had considered concerning discharge for felonious conduct involved violation of Connecticut criminal statutes, not federal criminal statutes, determined that this was a case of first impression. It therefore decided it must look to the legislative intent to resolve the question of whether the disqualification prescribed by the felonious conduct provision of General Statutes § 31-236 (2) (B) extends to and embraces the type of felonious conduct which caused the defendants' discharge, in this case the violation of a federal criminal statute defined as a felony. Looking to the legislative history of General Statutes § 31-236 (2) (B), the board found an intent that felonious conduct, to be a basis for disqualification from receiving unemployment compensation benefits in the event of discharge from employment, must involve a felony under the criminal statutes of the state of Connecticut.[3] The board therefore determined that the defendants were entitled to benefits and upheld the decision of the administrator. The trial court deferred to the board's construction of § 31-236 (2) (B) in dismissing the plaintiff's appeal. We find error.

In the interpretation of statutes, the intent of the legislature is to be found not in what it meant to say

---

ing one year is a felony."

Title 5 U.S.C. § 7311 reads in pertinent part: "An individual may not accept or hold a position in the Government of the United States . . . if he—

"(3) participates in a strike, or asserts the right to strike, against the government of the United States . . . ."

[3] Senator James J. Murphy, who introduced the bill containing the felonious conduct provision on behalf of the joint standing committee on labor and industrial relations, stated: "Mr. President, what is intended by this language as far as putting it as to legislative intent, what we're talking about here, we're talking about conduct which an employee would be guilty of, which conduct would constitute a felony under our general judicial penalty or criminal statutes." 20 S. Proc., Pt. 4, 1977 Sess., p. 1553.

but in what it did say. *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979). A primary rule of statutory construction is that if the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; *State* v. *Smith,* supra, 221; *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561 (1971); and there is no need to construe the statute. *Bell* v. *Planning & Zoning Commission,* 173 Conn. 223, 226, 377 A.2d 299 (1977). The words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed. *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975). Where the legislative intent is clear and unambiguous, there is no need for statutory construction or a review of the legislative history. Moreover, it is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms. *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 107, 425 A.2d 588 (1979); *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 507–508, 363 A.2d 1055 (1975). It, therefore, is not for the board or the court to search out some intent which they believe the legislature had; they are confined to the intention which is expressed in the words used. *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128 (1948).

We recognize that the provisions of General Statutes chapter 567 should be construed, interpreted and administered in such manner as to presume coverage, eligibility and nondisqualification in doubtful cases. General Statutes § 31-274 (c). This, however, is not a doubtful case. General Statutes § 31-236 (2) (B) clearly disqualifies an individual from receiving benefits if dis-

charged from employment for felonious conduct. The board found that the defendants were discharged for felonious conduct. Whether that conduct was felonious conduct under the laws of the state of Connecticut or of the United States is immaterial. The term "felonious conduct" as used in the statute is clear and unambiguous and not subject to interpretation. Connecticut being a part of the United States, the legislature must be presumed to have been aware that federal laws operate within our borders. If the legislature had desired an exception for federal felonious conduct, it could easily have inserted one in the statute. It is not the prerogative of the board or the court to do so.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion PETERS C. J., SHEA and SANTANIELLO, Js., concurred.

ARTHUR H. HEALEY, J., dissenting. I do not agree with the majority that the conduct for which these defendant claimants were discharged constituted "felonious conduct" within the meaning of General Statutes (Rev. to 1981) § 31-236 (2) (B) of the Connecticut Unemployment Compensation Act. The administrator of the Connecticut Unemployment Compensation Act initially determined that the claimants were eligible under the act for unemployment benefits. The plaintiff employer appealed this decision to the employment security board of review (the board); General Statutes § 31-237a (a); which conducted a de novo hearing, made findings of fact, and affirmed the determination of the administrator. The plaintiff employer appealed that decision to the Superior Court, which, in upholding the board, affirmed the administrator's construction of the act. Against this background, the majority declares that the pertinent provision upon which they

base their decision is "clear and unambiguous and not subject to interpretation." I respectfully disagree.

At the time these claimants applied for unemployment benefits, the Connecticut Unemployment Compensation Act provided in pertinent part that "[a]n individual shall be ineligible for benefits . . . if, *in the opinion of the administrator,* he has been discharged or suspended for felonious conduct or repeated wilful misconduct in the course of his employment . . . ." (Emphasis added.) General Statutes § 31-236 (2) (B). The "opinion of the administrator" language is clear legislative recognition of the administrator's duties and powers to administer the act with the expertise in that area that he has. See General Statutes §§ 31-250 through 31-253. We have very recently reiterated our recognition of the deference due to the administrator's construction of the unemployment compensation statutes which he has the statutory duty and authority to administer. See *Fellin* v. *Administrator,* 196 Conn. 440, 447, 493 A.2d 174 (1985); see also *Burnham* v. *Administrator,* 184 Conn. 317, 323, 439 A.2d 1008 (1981) ("storm Larry" claims). I acknowledge that the deference to be accorded is not absolute. The trial court, however, in a thoughtful decision, not only determined that in this case deference was to be accorded the administrator's construction of the act but also recognized that the administrator is charged by statute "to presume coverage, eligibility and nondisqualification in doubtful cases." General Statutes § 31-274 (c); see also *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 24, 434 A.2d 293 (1980). At the very least, this case is a "doubtful case."

The administrator and the board were of the opinion that the term "felonious conduct," as intended by the legislature, was to be limited to conduct that constituted felonies only under Connecticut law. Although the administrator's and the board's construction is not

the only possible construction of the "felonious conduct" provision, as the majority opinion indicates, it nevertheless is a plausible and supportable construction and, as such, was properly upheld by the trial court. See *Connecticut Department of Income Maintenance* v. *Heckler,* 471 U.S.    , 105 S. Ct. 2210, 2215 n.21, 85 L. Ed. 2d 577 (1985), citing *Unemployment Compensation Commission of Alaska* v. *Aragon,* 329 U.S. 143, 153, 67 S. Ct. 245, 91 L. Ed. 136 (1946); see also *Burnham* v. *Administrator,* supra, 322–23.

I am aware that tenets of statutory construction should be utilized to resolve, not to create, an ambiguity. Although the majority opinion states that the term "felonious conduct" may seem "clear and unambiguous," a legitimate question in my opinion is presented in this case in the context of the act, and the administrator and the board both recognized this.

The United States Supreme Court has stated that although there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes . . . [f]requently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' . . . [it] has followed that purpose, rather than the literal words." (Footnotes omitted.) *United States* v. *American Trucking Assns.,* 310 U.S. 534, 543, 60 S. Ct. 1059, 84 L. Ed. 1345 (1940). That court also said "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' " Id., 543–44. A statute "does not become ambiguous merely because the parties contend for differing meanings . . . [but rather] [t]he intent of the legislature is to be found in the meaning of the words of the statute; that is, in what the legislature

actually *did* say, not in what it *meant* to say." (Emphasis in original.) *Harris Data Communications, Inc.* v. *Heffernan,* 183 Conn. 194, 198, 438 A.2d 1178 (1981); see also *Robinson* v. *Unemployment Security Board of Review,* supra, 6–7 (construing the "voluntary quit" provision of General Statutes § 31-236 [2]). When circumstances justify, and they do in this case, "a court may use available aids to construction no matter how clear the statute may appear at first inspection." *Brigham* v. *United States,* 539 F.2d 1312, 1316 n.8 (3d Cir. 1976); see *United States* v. *Duncan,* 527 F.2d 1278, 1280 (3d Cir. 1976). "A word or statute is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses." *Town of Vernon* v. *Waukesha County,* 99 Wis. 2d 472, 477, 299 N.W.2d 593 (1980), aff'd, 102 Wis. 2d 686, 307 N.W.2d 227 (1981); 73 Am. Jur. 2d, Statutes § 258 (1974). That is the situation in this case. The term "felonious conduct" as used in the Connecticut Unemployment Compensation Act falls squarely within this category, and in this case the administrator and the board qualify as "reasonably well-informed persons." Still, the majority does not consider this a "doubtful case." General Statutes § 31-274 (c).

Courts should accord " ' "great deference to the construction given the statute by the agency charged with its enforcement." ' " (Citations omitted.) *Board of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241, 460 A.2d 1255 (1983); see also *Fellin* v. *Administrator,* supra, 447. Various appellate courts, in this context of acknowledging this black-letter principle of administrative law; see, e.g., 2 Am. Jur. 2d, Administrative Law § 241 (1962); have used such terms as "considerable deference"; *Gladstone, Realtors* v. *Village of Bellwood,* 441 U.S. 91, 107, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979); "substantial deference"; *Quern* v. *Mandley,* 436 U.S. 725, 738, 98 S. Ct.

2068, 56 L. Ed. 2d 658 (1978); "great deference"; *Van Wyk* v. *Bergland,* 570 F.2d 701, 705 (8th Cir. 1978); and "most respectful consideration." *Faile* v. *South Carolina Employment Security Commission,* 267 S.C. 536, 540, 230 S.E.2d 219 (1976); see also 2 Am. Jur. 2d, supra, § 241 ("highest respect"). This is particularly so when the agency interpretation can be said "to be a reasoned and supportable interpretation of the statute." *Levine* v. *Fairleigh Dickinson University,* 646 F.2d 825, 831 (3d Cir. 1981), citing *Whirlpool Corporation* v. *Marshall,* 445 U.S. 1, 11, 100 S. Ct. 883, 63 L. Ed. 2d 154 (1980). Of course, "the weight [to be accorded an agency determination] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all factors which give it power to persuade, if lacking power to control." *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

The application of those tenets of statutory construction show that there can be no question that the administrator's and the board's decisions in this matter constitute a reasonable and supportable interpretation of this provision of the Connecticut Unemployment Compensation Act, particularly in light of both the legislative mandate of § 31-274 (c) creating a presumption of eligibility *and* the "in the opinion of the administrator" language of the disqualification provision, § 31-236 (2) (B). For these reasons alone, the determination that these claimants were eligible for unemployment compensation was entitled to significant deference by the trial court.

Further, as the trial court pointed out, the administrator and the board, when faced with this question of first impression, looked to the legislative history of the 1977 amendments to the Act, of which the "felonious conduct" language was one part, and particularly the

remarks of Senator James J. Murphy, who had introduced the 1977 amendments that included this language on behalf of the joint standing committee on labor and industrial relations. In response to a question whether a definition existed for the newly added "felonious conduct" language for disqualification in the case of a discharge, Senator Murphy explained the amendment as follows: "Mr. President, what is intended by this language *as far as putting it as to legislative intent,* what we're talking about here, we're talking about conduct which an employee would be guilty of, which conduct would constitute a felony *under our general judicial penalty or criminal statutes."* (Emphasis added.) 20 S. Proc., Pt. 4, 1977 Sess., p. 1553. It is clear that he was referring to "our" Connecticut criminal statutes.

Moreover, in 1982, the General Assembly amended the same provision by adding as a disqualifying factor "participation in an illegal strike as determined by state or federal laws or regulations." Public Acts 1982, No. 82-262, § 2, codified at General Statutes § 31-236 (2) (B). Significantly, the legislature made no amendment to the "felonious conduct" language of § 31-236 (2) (B). Although this 1982 amendment may indicate some legislative dissatisfaction with the administrator's determination of these claimants' eligibility for unemployment compensation, it must be pointed out that there is no indication that the legislature intended to alter the construction by the administrator and the board of the "felonious conduct" language. It is axiomatic that the legislature is presumed to know the existing law, including the interpretation given by the administrative agency charged with its enforcement and implementation. Moreover, it is a well settled canon of statutory construction that provisions that are reenacted into law, as was the "felonious conduct" language, continue to operate as they had prior to any amendment. An amendatory act

presumably does not change the existing law any further than is expressly declared or necessarily implied. *Robinson* v. *Unemployment Security Board of Review,* supra, 21 n.6; *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 63, 392 A.2d 491 (1978); *State* v. *Fahy,* 149 Conn. 577, 582, 183 A.2d 256 (1962), rev'd, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963). That presumption has not been shown to be rebutted in this case. In addition, the legislature has also mandated that "[n]o part of [the Unemployment Compensation Act] shall be deemed repealed by subsequent legislation if such construction can reasonably be avoided." General Statutes § 31-274 (b). Therefore, because the legislature has not expressly repealed the administrator's construction of the phrase "felonious conduct," that construction must be still given full effect.

Under the circumstances of this case as set out above, including the remedial purpose of the act, I agree with the trial court and would affirm the administrator's decision, which is a reasonable and supportable one.

I would find no error and, therefore, I dissent.