[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 5, 1993 the jury which heard this personal injury case returned a verdict for the plaintiff James J. Smith for economic damages of $106,860.00 and noneconomic damages of $91,000.00. After a 9% reduction for plaintiff's contributory negligence, the total award was $180,052.60. Following the acceptance and recording of the verdict, the defendant moved the court for a reduction of the plaintiff's economic damages, contending that payments received by the plaintiff under our workers' compensation statutes are a "collateral source" which must be deducted from the verdict in accord with General Statutes 52-225a and 52-225b. The plaintiff objected, contending that workers' compensation payments are not a "collateral source" within the statutory definition.
In 1986 and 1987 the Connecticut legislature adopted so-called "Tort Reform" legislation. Among the provisions enacted was a provision requiring a reduction in an award of damages for personal injury for "collateral sources" paid to or for the benefit of the injured plaintiff. Public Acts 1986, No. 86-338, 4 and Public Acts 1987, No. 87-227, 5, later codified as General Statutes 52-225a. The statutory definition of collateral sources is set forth in General Statutes 52-225b
which provides as follows:
 For purposes of sections 52-225a to 52-225c, inclusive: "Collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. "Collateral sources" do not include CT Page 2057 amounts received by a claimant as a settlement.
(Emphasis added.)
In construing a statute, courts must start with the language used by the legislature. West Hartford Interfaith Coalition, Inc. v. Town Council, 228 Conn. 498, 508 (1994).
 [T]he intent of the legislature is to be found not in what it meant to say but in what it did say . . . A primary rule of statutory construction is that if the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature . . . and there is no need to construe the statute. . .
(Citations omitted.) Federal Aviation Administration v. Administrator, 196 Conn. 546, 550 (1985).
The language used by the legislature to define "collateral sources" is clear. Included are two types of collateral sources. The first is payments made pursuant to health insurance, automobile insurance or other "similar insurance." The second is payments made pursuant to a contract or agreement. Workers' compensation payments are not made pursuant to insurance or agreement. Workers' compensation payments are made pursuant to statutory requirement, as set forth in the Workers' Compensation Act. General Statutes 31-275 et seq. Clearly, payments required to be made under the Workers' Compensation Act do not fall within the express language used by the legislature to define "collateral sources."
If there were any question about the intention of the legislature in defining "collateral sources" as it did, the issue is readily resolved in the legislative history of the tort reform legislation. The legislature first considered and enacted legislation to change the common law collateral source rule in 1985. During a public hearing on the new collateral source proposal, the following colloquy took place involving Representative Richard Tulisano, co-chairman of the Judiciary Committee:
 REP. TULISANO: Right now there are a number of areas in which there are either statutory liens or rights of recovery of some CT Page 2058 workmen's compensation, no-fault insurance, State of Connecticut has a lien, you know there are a lot of liens, that if one gets a recovery, they have to be recompensated for the amount of money, so the individual is not a double shot for the individual. In fact, the jury or the court would come with say x dollars. When the money is distributed, they get x less. With this also have the affect of reducing the amount of potential reimbursement insurance companies and workmen compensation carriers would get if, in fact, the total award went down?
 MR. WRIGHT: Well, if it is recoverable now, then it is obviously not going —
 REP. TULISANO: You wouldn't consider that a collateral source, then. I mean if you were to have the rule and there was statute by recovery, you wouldn't want that part of the information to go in so that you really got the total —
 MR. WRIGHT: Yeh, and would, I am not trying to hide anthing [anything] —
 REP. TULISANO: Some of the things we mentioned are already recoverable, and so, therefore, basically excluded after —
 MR. WRIGHT: Yeh, they shouldn't, you would want, wouldn't want to reduce the award —
REP. TULISANO: Okay, thank you.
Proceedings before the Judiciary Committee, April 12, 1985 at p. 1924. In 1986, the following year, when the 1985 tort reform legislation for medical malpractice cases was extended to all personal injury claims, a proponent of the legislation explained the collateral source provision, "[T]here would be no mandate to reduce an award for collateral sources where a right of subrogation exists pursuant to our statutes." Senate Proceedings, 1986 Session, p. 3442. CT Page 2059
The defendant contends that Section 52-225b is "silent as to whether workers' compensation benefits are to be considered a collateral source." The defendant argues that because the Connecticut statute is based on a Florida statute and because the Florida statute expressly excludes workers' compensation benefits from its definition of collateral sources while Connecticut does not have such an express exclusion, the Connecticut legislature must have intended to include workers' compensation benefits in the Connecticut definition of collateral sources. This argument is not persuasive for several reasons. First, this contention is belied by the Connecticut legislative history as set forth above. Secondly, a comparison of the Florida collateral sources statute with our Section52-225b reveals that the Florida version is a much more all-encompassing provision, expressly including sources such as social security payments, payments under income disability acts "or any other public programs. . .", and "any other system intended to provide wages during a period of disability." Fla. Stat. Ann. 627.7372 (West 1984). Given such a broad and far-reaching definition, an express exclusion of workers' compensation benefits is necessary for there to be any exemption. However, our Connecticut collateral sources definition, in stark contrast with the Florida statute, is far more narrowly defined, including only payments made under health and similar insurance and payments made pursuant to contract or agreement. In the context of such a narrowly defined statute, an express exclusion of workers' compensation benefits is not necessary.
Even if workers' compensation benefits could be found to be within the statutory definition of "collateral sources," the provisions of section 52-225a require that workers' compensation benefits not be deducted from jury verdicts. Section 52-225a
explicitly provides that "there shall be no reduction for (1) a collateral source for which a right of subrogation exists. . ." Under General Statutes 31-293, an employer who has paid workers' compensation benefits may bring an action against a third party legally liable for causing the employee's injuries or the employer may join as party plaintiff in the employee's action against such a third party. Our Connecticut Supreme Court has referred to this right of the employer under 31-293
as "the employer's statutory right to subrogation of the proceeds of the employee's claim against the tortfeasor." Durniak v. August Winter Sons, Inc., 222 Conn. 775, 779
CT Page 2060 (1992). See also Stavola v. Palmer, 136 Conn. 670, 677 (1950) where the Supreme Court stated with respect to the employer's right under 31-293, "we have referred to that right as in effect one of subrogation to the right of the injured employee to recover for the tort committed against him."
In the case before the court the plaintiff Smith's employer failed to timely intervene in this action to assert its claim for reimbursement for the workers' compensation benefits paid to the plaintiff. As a result, the employer lost all right to recover from the defendant tortfeasor. Skitromo v. Meriden Yellow Cab Co., 204 Conn. 485, 489-90 (1987). The defendant argues that the plaintiff will recover "a windfall" if the workers' compensation benefits are not deducted from the jury verdict. This claim is unavailing, however.
First, in adopting the collateral source definition and the deduction requirement, the legislature did not provide for any exception in those cases where the employer fails to timely exercise its right to claim reimbursement and thereby loses that right. In the absence of any such exception, the express statutory language applies and there can be no deduction. Secondly, the defendant cites no case law or other authority which supports the defendant's contention that the court should deduct workers' compensation benefits from the jury verdict even in those instances where the employer has lost its right of reimbursement by failure to act timely. Finally, in a case with some factual similarity to the one before the court, our Connecticut Supreme Court responded to a similar windfall argument as follows, "The defendants argue that such a result would contravene the legislative intent against permitting double recovery for the same injury. Any unfairness, however, is due to the defendants' own failure to comply with the statutory timetable." Skitromo v. Meriden Yellow Cab Co., supra at 490.
The defendant's motion is denied. Judgment is entered for the plaintiff James J. Smith for $180,052.60 plus costs to be taxed.
CHRISTINE S. VERTEFEUILLE, JUDGE