[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in the nature of interpleader brought pursuant to General Statutes Sec. 52-484. The plaintiffs are two law firms, Schatz Schatz, Ribicoff Kotkin and Brown, Paindiris Zarella. The defendants are Phantom Partnership (Phantom) and Spaghetti Warehouse, Inc. (Spaghetti).
On February 24, 1994, the plaintiffs filed a complaint alleging the following: The defendants had entered into a contract for the purchase and sale of certain real estate 69-71 Bartholomew Avenue located in Hartford. Pursuant to this contract, Spaghetti tendered a $25,000 deposit jointly to the plaintiffs as co-escrow agents; this deposit is currently being held jointly in an interest bearing escrow account by the plaintiffs, who claim no interest in the escrowed funds. Spaghetti and Phantom each claim to be entitled to the $25,000 deposit. On March 23, 1992, plaintiff Schatz Schatz, Ribicoff 
Kotkin filed a motion for interlocutory judgment of interpleader pursuant to General Statutes § 52-484; this motion was granted by the court, Allen, J., on April 6, 1992.
On June 14, 1992, Spaghetti filed a statement of claim in which it alleges the following: On July 2, 1991, Spaghetti entered into a purchase and sale contract with Phantom. Pursuant to the contract, Spaghetti tendered a $25,000 deposit to the plaintiffs. The terms of the contract provide that Spaghetti has the right to void the contract, in its sole discretion, within 45 days of Phantom's acceptance of the contract. On August 14, 1991, within 45 days, by facsimile letter, Spaghetti voided the contract and withdrew its offer to purchase the property. Spaghetti demanded, in a timely fashion, the return of the deposit, but Phantom refused to return the funds or authorize the release thereof.
On August 31, 1992, Phantom filed an amended answer and two special defenses to Spaghetti's statement of claim. In their first special defense, Phantom claims that Spaghetti breached an implied duty of good faith and fair dealing owed to Phantom by 1) entering into the purchase and sale contract with the intent of later terminating the agreement and 2) terminating the underlying agreement for reasons which were known to Spaghetti at the time of the execution of the contract. CT Page 9884
On September 3, 1992, Phantom filed a second amended statement of claim in which it alleges that Spaghetti's attempt to terminate the purchase and sale contract amounts to a default under paragraph XVI of the contract and that, consequently, the plaintiffs should tender the $25,000 deposit to Phantom. On September 12, 1992, Spaghetti filed an answer, denying that its termination of the purchase and sale agreement amounts to a default under the contract terms. On September 17, 1992, Spaghetti filed a reply to Phantom's special defenses in which it denied the claims contained therein.
On April 27, 1993, and June 2, 1993, Spaghetti and Phantom, respectively, filed motions for summary judgment. In support of their respective motions for summary judgment, Spaghetti and Phantom each interpreted the terms of the contract in its favor. These motions were denied by the court, Wagner, J., on September 24, 1993. In so ruling, the court stated that, while the determination of contracting parties' intent is a question of law where the contract language is clear, where the language of a contract is ambiguous, the determination of the parties' intent is a question of fact for the trier of fact. The court noted that the terms of the contract provide that Spaghetti had 45 days to cancel the contract based upon its findings during the "feasibility period." The court concluded that the contract was ambiguous regarding the limits of investigation intended by the parties to ensue during the "feasibility period." Accordingly, the court denied the competing motions for summary judgment.
The decision in this case is governed by the interpretation of Section III of the Purchase and Sale contract which provides, in part:
III. CONTINGENCIES FOR PERFORMANCE FEASIBILITY STUDY PERIOD BYPURCHASER
 The purchase of the property shall be subject to the following conditions precedent:
 The Purchaser shall have forty-five (45) days from the acceptance date of this Contract by both Seller 
Purchaser to (i) conduct a feasibility study of the building and property to determine that the building is CT Page 9885 structurally sound and will be compatible with the necessary requirements to renovate the building . . . (ii) successfully negotiate a lease-back agreement . . . and conduct Purchasers [sic] own environmental investigation of the land and building. On or before the end of the 45 day feasibility period, Purchaser shall have the right at Purchaser's sole discretion based on Purchaser's findings during the 45 day to elect to void this contract and have all earnest money and interest promptly returned to purchaser or notify the Seller that Purchaser intends to accept the building in its present condition with the exception of certain environmental problems which purchaser shall require Seller to remove at Seller's cost as outlined in Article VII of this contract and Purchaser's own independent environmental study. If the cost of such removal as required by Purchaser of Seller does not exceed $25,000.00, then the Seller shall be required to complete all environmental work as Purchaser requires prior to closing and deliver all certification of such removal.
 In the event the cost of such removal shall exceed $25,000.00, then the Seller shall have the right to complete all work as required by Purchaser or declare this contract to be null and void and all earnest money and interest shall be promptly returned to Purchaser.
(Emphasis added.)
In determining the scope of a contract, "[t]he plain, clear language of the contract must be accorded its logical effect." CT Page 9886Four D's, Inc. v. Mattera, 25 Conn. App. 308, 313, 594 A.2d 484
(1991).
 The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used.
(Citation omitted; internal quotation marks omitted) E FConstruction Co. v. Rissil Construction Associates, Inc.,181 Conn. 317, 320, 435 A.2d 343 (1980). "[I]n situations in which the parties have their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." (Internal quotation marks omitted.) Thompson Peck, Inc. v. Harbor MarineContracting Corporation, 203 Conn. 123, 130-31, 523 A.2d 1266
(1987). Generally, the determination of "[t]he intention of the parties in executing a contract is a question of fact";McClintock v. Rivard, 219 Conn. 417, 431, 593 A.2d 1375 (1991); that is "reversible only if the trier of fact could not reasonably have arrived at the conclusion it had reached."Thompson Peck, Inc. v. Harbor Marine Contracting Corporation, supra, 130. Where, however, "there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Id., 131.
"A contract is to be construed as a whole and all relevant provisions will be considered together." (Citations omitted; internal quotation marks omitted.) Barnard v. Barnard, 214 Conn. 99,109, 570 A.2d 690 (1990). Further, "[a] promise not expressly made will not be read into the contract unless it arises by necessary implication from the provisions of the instrument."Ives v. Willimantic, 121 Conn. 408, 411, 185 A. 427 (1936). "Terms cannot be added to a contract by interpretation."Connecticut Union of Telephone Workers v. Southern New EnglandTelephone Co., 148 Conn. 192, 200, 169 A.2d 646 (1961).
"In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, CT Page 9887 natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract."Sturman v. Socha, 191 Conn. 1, 10, 463 A.2d 527 (1983);Marcus v. Marcus, 175 Conn. 138, 141-42, 394 A.2d 727
(1978); Sturtevant v. Sturtevant, 146 Conn. 644, 647-48,153 A.2d 828 (1959). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings."Downs v. National Casualty Co., 146 Conn. 490, 494,152 A.2d 316 (1959). Whenever two interpretations of a contract are equally possible, the contractual language will be construed against the party responsible for its inclusion. Ravitch v. Stollman Poultry Farms, Inc.,165 Conn. 135, 145-46, 328 A.2d 711 (1973).
"A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses." Federal Aviation Administration v. Administrator,196 Conn. 546, 554, 494 A.2d 564 (1985). "`Ambiguous' can be defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one."Lopinto v. Haines, 185 Conn. 527, 538, 441 A.2d 151 (1981).
The key question in this case is whether Section III of the contact is ambiguous. A careful reading of this section indicates that Spaghetti had 45 days from July 2, 1991 to 1) conduct a feasibility study; 2) successfully negotiate an agreement and 3) conduct an environmental investigation of the land and building. Within 45 days Spaghetti had the right at its own discretion based on its findings to void the contract and have the $25,000 deposit plus interest returned or notify Phantom that it intends to purchase the building under conditions as set forth in the contract.
The word "or" as defined in Webster's Third New International Dictionary (unabridged) means "an alterative between different or unlike things states or actions"
The court in interpreting Article III of the contract has determined that a fair and reasonable construction of the words therein using the common, natural and ordinary meaning of the language gives Spaghetti Warehouse the right to declare the contract void under the factual circumstances of this case or in the alternative to complete the purchase of the subject property. CT Page 9888 Spaghetti Warehouse, Inc. elected to void the contract.
The court hereby orders the plaintiffs to return the deposit of $25,000 plus accrued interest to Spaghetti Warehouse, Inc.
The plaintiffs are discharged from any and all liabilities to the defendants in relation thereto.
Harold M. Missal State Judge Referee