[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
The procedural and factual history of this case is as follows.
On June 22, 1995, the plaintiff, Kami Jo Rand (Rand) filed a paternity action against the defendant, Matthew R. Duval Duval) pursuant to General Statutes § 46b-160. Rand alleged that Duval was the father of Nicholas Brand Duval who was born on October 4, 1995. After genetic testing, Duval acknowledged paternity, and the court (Teller, J) adjudicated him to be the father of said minor child on February 20, 1996.
Pursuant to 46b-171, the court then entered certain orders for the current support and maintenance of the child. The court, however, deferred action on plaintiff's request for past due support and medical expenses associated with the child's birth after the defendant claimed that he was not responsible for "lying-in" expenses under the statute. The parties filed CT Page 4056 posttrial briefs and a stipulation relating to the amount of the `lying in' expenses. Thus, the sole issue before the court is whether a person adjudged to be the father of a minor child under46b-160 is responsible for all or any portion of the child's and mother's `lying in' expenses associated with the birth of the child.
 I
The resolution of the issue presented turns on General Statutes § 46b-171 (a), which now states in relevant part:
 If the defendant is found to be the father of the child, the court . . . shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able . . . to be reasonably commensurate with the financial ability of the defendant, and to pay a certain sum periodically until the child attains the age of eighteen years. . . .
The plaintiff argues that the defendant's obligation to pay the lying-in expenses associated with the child's birth falls squarely within the phrase "stand changed with the support and maintenance." In opposition, the defendant notes that prior to 1989, General Statutes § 46b-171 read:
 If the defendant is found guilty, the court shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, and to pay a certain sum weekly until the child attains the age of eighteen years; and the court shall ascertain the expense of lying-in and of support and maintenance of the child until the time of rendering judgment, and order him to pay the amount to the complainant. . . .
(Emphasis added.)
In 1989, however, the legislature deleted the underlined language with little explanation. Public Acts 1989, No. 89-360, CT Page 4057 § 42. Relying on the deletion of the lying-in language, the defendant asserts that it was the intent of the legislature to relieve an adjudicated father of the obligation to pay these expenses. The defendant's position is supported by the statement made on the House floor by Representative Tulisano who explained the 1989 amendment by noting that:
 [t]his amendment establishes the use of genetic testing in determining paternity, allows the Family Magistrates to hear those matters, unless it is a jury trial which is requested, in which case it would have to be heard by a Clerk, a Judge of the Superior Court, eliminates the liability for lying-in expenses, and provides for past support for three years. . . .
(Emphasis added). 32 H.R. Proc., Pt. 38, 1989 Sess., p. 13526. This was the only reference to the deletion of the `lying-in' language in 99 pages of legislative proceedings relating to Public Acts, 1989, No. 89-360.
The Appellate Court recently enunciated several principles of statutory construction which are applicable to the issue presented here. In Keeney v. Fairfield Resources, Inc., 41 Conn. App. 120,131-132 (1996), the court said:
 `The objective of statutory construction is to give effect to the intended purpose of the legislature.' Rose v. Freedom of Information Commission, 221 Conn. 217, 225
1992). `As is true in every case involving the construction of a statute, our starting point must be the language employed by the legislature. Verdon v. Transamerica Ins. Co., 187 Conn. 363, 366 (1982); see United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); Vaillancourt v. New Britain Machine/Litton, 224 Conn. 382, 391 (1993). In Groton v. Yankee Gas Services Co., 224 Conn. 675, 689
(1993), our Supreme Court stated: `In interpreting the language of a statute, we are guided by the premise that we must CT Page 4058 consider the statute as written and read it as a whole.' Orticelli v. Powers, 197 Conn. 9, 13-14 (1985). "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous. Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." (Citations omitted; internal quotation marks omitted.) Peck v. Jacquemin, 196 Conn. 53, 66 (1985). We approach this task mindful of the assumption that the legislature intended to accomplish a reasonable and rational result. Id." In statutory construction, `[o]ur task is to find the expressed intent of the legislature, "that is, the intention of the legislative body, `as found from the words employed to make it manifest."" . . . We seek the intent of the legislature `not in what it meant to say, but in what it did say.'" (Citation omitted.) Sanzone v. Board of Police Commissioners, 219 Conn. 179, 186-87
(1991).
"It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. This intent is to be ascertained from the language of the statute itself if the language is clear and unambiguous."Hurlbut v. Lemelin, 155 Conn. 68, 73, 230 A.2d 36 (1967). When a statute is clear and unambiguous, "[i]t . . . is not for the . . . court to search out some intent which it believes the legislature had . . . [the court is] confined to the intention which is expressed in the words used. Federal AviationAdministration v. Administrator, 196 Conn. 546, 550 (1985). "The actual intent, as a state of mind, of the members of a legislative body is immaterial, even if it were ascertainable."Park Regional Corp., v. Town Plan Zoning Commission, 144 Conn. 677,682 (1957). Furthermore, "a legislative intention not expressed in some appropriate manner has no legal existence.State v. Smith, 194 Conn. 213, 222 (1984).
II CT Page 4059
The financial obligation of a person found to be the father of a child born out of wedlock has long been the subject of state statutes and judicial interpretation. In 1808, the legislature enacted a paternity statute which read in part that:
 [H]e who is accused by any woman, to be the father of a bastard child, begotten of her body, she continuing constant in such accusation (being examined upon oath, and put to the discovery of the truth in the time of her travail) shall be adjudged the reputed father of such child notwithstanding his denial thereof, and shall stand charged with the maintenance thereof, with the assistance of the mother, as the county court in that county in which such child is born shall order. . .
(Emphasis added.) 1 Public Statute Laws, Title XXII, § 1 (Hudson Goodwin 1808).
In 1815, a judgment entered pursuant to this statute came under direct attack in the case of Bennett v. Hall, 1 Conn. 417
(1815). After finding Bennett to be the father of the child, the trial court found that "the expenses necessarily incurred by the said [mother] for said child at its birth, and nursing the same . . . have amounted to the sum of 120 dollars, " and ordered the father to pay half. Id. That court also ordered that Bennett pay Hall 58 cents per week for the continued maintenance of the child, and allowed the clerk of the court to issue execution every three months for any arrearage.
Bennett attacked the form of the judgment alleging that the statute provided no mechanism for the clerk to issue execution for any arrearage in continued maintenance obligations. In rejecting Bennett's assertion on appeal, the court (Swift, CJ) reasoned that the judgment was "conformable to the practice in most of the counties in this state from time immemorial," and that the court had the power to fashion maintenance orders. Id. 418. While the case is primarily concerned with the lower court's ability to have the clerk automatically issue executions for any support arrearage, it is noteworthy that the lower court specifically ordered Bennett to pay one half of the necessary expenses incurred by the mother at the child's birth. This order CT Page 4060 was left undisturbed by the Connecticut Supreme Court. Thus, as early as 1815, the implication of the holding is that such `lying-in' expenses were encompassed within the father's statutory obligation to "stand charged with the maintenance of" his child.
Two years later, in the case of Comstock v. Weed, 2 Conn. 155
(1817), the Supreme Court directly addressed the issue of an adjudicated father's liability for lying-in expenses. After finding Comstock to be the father of the child, the lower court ordered him to pay $40 to the mother "for the expenses necessarily incurred and paid by [her] for said child, at its birth . . . and nursing the same until" the time the infant died, a month after its birth. Id. 155. Comstock appealed the judgment of the lower court. He argued that the statute mandated that he be charged with the maintenance of the child, which, in his opinion, encompassed those expenses incurred only after the child was born, and not the expenses associated with the pre-natal and birthing care. Id. 156.
In rejecting Comstock's position, Chief Justice Swift wrote that "[t]he allowance of expenses at the birth of the child cannot be considered as extending beyond lying-in expenses. These have always been allowed. Such has been the Practicalconstruction of the statute; and it appears to me to be a reasonable one." (Emphasis added; italics in original). Id. 157. Justice Hosmer, also writing for the court, was more direct when he stated:
 [t]he objection which denounces the allowance of supplies at the birth of the child, is in the face of uniform usage, and a fair construction of the law. Bennett v. Hall, [1 Conn. 417 (1815)]. Without wresting the statute, in the least degree, they may be considered as embraced in the expression `shall stand charged with the maintenance' of the child. I shall long hesitate before I can believe, that the necessary assistance at the birth, so indispensable to the life of the infant, is not maintaining the child. As little am I willing to admit, that the law intended to relieve the putative father from a contribution to this necessary expense.
CT Page 4061
(Italics in original.) Id. 159. Finally, Justice Gould wrote,
 [a]s to the allowance of `expenses at the birth,' — by which, it is said, must be understood the lying-in expenses, — it cannot be intended, upon this record, that those expenses were not incurred for the preservation or maintenance of the child itself, at the time of its birth. And if such an intendment could be made, it might still require much consideration, whether a practical construction of the statute, built upon long and general usage, ought now to be overturned. But there is no necessity of deciding this point. For the court cannot know, from the language of the record, that any lying-in expenses were allowed.
(Italics in original.) Id.
It is important to note that each of the Justices agreed that lying-in expenses were included within the statute's mandate that the father be charged with the maintenance of the child, and that to hold otherwise would reverse a long standing interpretation of the term "maintenance." Also instructive is Justice Hosmer's direct reliance on Bennett v. Hall, supra, in which he confirms the court's prior implicit interpretation.
Relying on the judicial construction of the paternity statute, the legislature amended the Act in 1821 to read in relevant part:
 [a]nd if the court find him guilty [of being the father], they shall make an order, that he shall stand charged with the maintenance of such child, with the assistance of the mother, and that he shall pay a certain sum per week, for such time as the court shall judge proper, and that the clerk of the court shall issue execution for the same, quarterly: and the court shall ascertain the expense of lying-in, and the nursing of such child, till the time of rendering judgment, and order him to pay one half thereof to the CT Page 4062 complainant.
The Public Statute Laws of the State of Connecticut, Title 8, § 1, Revision of 1821 (Goodrich, Huntington Hopkins 1821).
By this amendment, the term "lying-in" appeared in the statute for the first time. I note, however, that the Act specifically directs the court to ascertain the lying-in expenses of the child and order that the father pay one half of such expense. It would seem that the legislature required such a finding in response to the concern over the court's past practice of lumping all of the maintenance expenses, including lying-in costs, in one sum, as alluded to by Justice Gould in Comstock v.Weed, supra.
Thus, I conclude that the addition of the term lying in expenses in the 1821 Act imposed no additional obligation on the father since that obligation had already been found to exist in the court's definition of the word maintenance. The amendment merely directed that the court make a monetary distinction between those expenses associated with the birth of the child and those associated with post-birth support[1] and made no substantive changes to the father's obligations. Rather, it only affected the form of the court's judgment as the court was now mandated to specifically "ascertain" such expenses.
The statute of 1821 was construed two years later in Judsonv. Blanchard, 4 Conn. 557 (1823). After finding that Judson was the father of the child, the trial court specifically found "the lying-in expenses, necessarily incurred and paid by the said [mother], for the said child, at its birth and for nursing the same, have amounted to the sum of 109 dollars, 15 cents, and that of right the defendant ought to pay thereof the sum of 54 dollars and 72 cents, being the one half." Id. 559. The father, noting that the statute had been amended to conform to the holding inComstock v. Weed, argued that the expenses allowed were "neitherlying-in expenses, nor for the maintenance of-the child." Id. 501. Judson specifically challenged the allowance for seven weeks of boarding of the mother, including lying in expenses, on the ground that she could not have been "lying-in" or giving birth for seven weeks. Judson further objected to the costs for boarding a nurse, and for shirts, shoes, and stockings purchased for the mother. Judson claimed that if the court allowed these expenses, he would be actually then charged with the "maintenance of the mother, instead of the child." Id. 561. Under Judson's CT Page 4063 reasoning, "lying-in expenses comprise what is necessary for the mother during parturition, and nothing more." Id. In opposition, the mother countered that "[t]he term lying-in expenses, must be understood with reference to the subject matter. It is not limited, in its application, to the mere expenses of parturition, but extends to the period, during which the mother is affected by the birth of the child." Id. 562.
The court, (Hosmer, CJ) agreed with the mother and wrote:
 [t]he reputed father of a bastard child, by the words of the statute, shall stand charged with the maintenance of such child, with the assistance of the mother. The term `maintenance' has been construed to mean the expenses of lying-in, or child-bed expenses, such as board, wages, and other charges attendant on nursing the child, and the necessary expenditures at the birth of the child, and even after the birth, which do not extend beyond the period of the sickness consequentially resulting from the act of parturition.
Id. 566.
The court did not rely on the statute's mandate that the court ascertain the lying-in expenses, but on the word "maintenance" which had previously been interpreted in Bennett v.Hall, supra, and Comstock v. Weed, supra, as encompassing the expenses of `lying-in. The court noted:
 [t]he necessary assistance, at the birth of the child, as well as the expenses immediately after, and during the sickness attendant on the lying-in, indispensable as they may be to the life and health of the infant, are justly considered as falling within the term `maintenance. A rigid and literal construction of the statute, would lead the mind to a different result; but this law, like every other, must be expounded in reference to its manifest object. The cloathing [sic] of the child is requisite to the maintenance of it, in life and health; and the nursing and cloathing of the mother may be equally necessary, CT Page 4064 for the same reason.
Id. 567.
Thus, the Supreme Court adopted an expansive view of the term "maintenance" and allowed recovery for all of the birth related expenses claimed by the mother.
Although the statute was revisited and amended in 1875, 1888, 1902, 1918, 1927, 1930, 1957 and 1959, the language concerning maintenance and the court's obligation to ascertain the lying-in expenses remained virtually unchanged[2] In 1978, the court again revisited the statute [then General Statutes § 52-444] to determine whether the putative father of a child may be held liable for the support of the mother while she cared for the child. Relying on the nineteenth century cases of Comstock v.Weed, supra., and Judson v. Blanchard, supra, the court noted that "[t]he history of judicial interpretation of the Connecticut paternity statutes reflects the propensity of this court to construe liberally the term `maintenance' so as to carry out the underlying purpose of the legislation and assure that the child is well provided for." Faraday v. Dube, 175 Conn. 438, 443
(1978). The court concluded that the "words `support and maintenance,' as used in the present statute, must be defined to encompass all expenses necessary to maintain the child in life and health . . . whatever the court might determine these expenses to be." Id. 444. Thus, the court left to the "sound discretion of the trial court" the determination of whether support of the caretaker mother is necessary for the maintenance of the child, but refused to find that such an order would be outside of the term "maintenance.". Id. 445.
"The legislature is presumed to act with awareness of long standing judicial construction of a statute or a statutory provision." Faraday v. Dube, supra, 175 Conn. 443. Based on the long history of judicial construction of this statute, this court would be hard-pressed to interpret the current statute to exclude lying-in expenses within the term `maintenance.' When a legislature amends an existing act there is a presumption that it meant to create a new right or withdraw an existing one. 1A J. Sutherland, Statutory Construction § 22.30 (5th Ed. 1992) "Therefore, any material change in the language of the original act is presumed to indicate a change in legal right." Id.
This presumption, however, is inapplicable to this case CT Page 4065 because the legislature did not make a material change to the word `maintenance.' but only eliminated the long-standing mandate that the court ascertain the expenses of lying-in as a subcategory of the father's duty to help maintain his child.
"It would be incongruous for the legislature [to alter a clearly defined and well established statute] without spelling out that change unambiguously . . . . In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language."Nor'easter Group, Inc. v. Colossale Concrete, Inc., 207 Conn. 468,481 (1988).
Therefore, the Supreme Court's prior interpretation of the word `maintenance', which encompassed lying-in expenses, must remain because that term is clear and unambiguous and cannot be ignored. It is not to be treated as superfluous, or as having its meaning, defined of long duration, changed by legislative fiat, without a clearly expressed manifestation in the statute itself of the legislative intent.
This is especially so in the light of General Statutes §1-1, words and phrases (a) which mandates that, "In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." The word `maintenance' is just such a word which has acquired a peculiar and appropriate meaning in the law when used in the context of a paternity action.
I must adhere to the well settled principle of statutory construction that "[t]here is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment so that in construing it no part is treated as insignificant or unnecessary." Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399,407 (1987).
"If the language of the statute is clear, it is assumed that the intention is expressed by the words themselves and therefore there is no need to construe the statute . . . for where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended but what intention it expressed by the words that it used." (Citation omitted.) Robinson v.CT Page 4066Unemployment Security Review Board, 181 Conn. 1, 6 (1980). Although Representative Tulisano's statement on the House floor suggests that the amendment eliminated the father's liability for lying-in expenses, simply removing that term from the statute was not enough to give effect to the legislature's supposed intent. Although I acknowledge that statements of legislators often provide strong indication of legislative intent; see State v.Golino, 201 Conn. 435, 445 (1986); they are not controlling. SeeState v. Ellis, 197 Conn. 436, 460 (1985). "In the interpretation of statutes, the intent of the legislature is to be found not inwhat it meant to say, but in what it did say. (Emphasis added.)Gomeau v. Forrest, 176 Conn. 523, 526 (1979).
Finally, other statutes in Chapter 815y (paternity matters) buttress the court's conclusion. Under General Statutes §46b-163, a paternity action brought pursuant to § 46b-160 or46b-161 is not defeated by the stillbirth or premature termination of a pregnancy. Even in these situations, § 46b-163
states that "the court shall enter such order as it shall, after hearing, determine proper." This provision obviously includes the power to require the father of the stillborn infant to shoulder responsibility for the lying-in expenses associated with the stillbirth or early termination. More impelling, however, is General Statutes § 46b-172a which provides a procedure for a putative father to assert his paternity of a child. Once a proper application is made, "the claim for paternity shall be admissible in any action for paternity under section 46b-160 . . . and shall contain language that [the putative father] acknowledges liability for contribution to the support and education of the child after its birth and forcontribution to the pregnancy-related medical expenses of themother." (Emphasis added.) General Statutes § 46b-172a(a).
It would be utterly inconsistent for the court to conclude that a father may not be held liable for the lying-in expenses of his child after a finding of paternity in a contested hearing under General Statutes § 46b-160, but that he could be liable for those same expenses when he voluntarily asserts paternity under § 46b-171a or when the child is stillborn or the pregnancy is prematurely terminated. Such a construction may encourage contested hearings with the goal of avoiding liability for lying-in expenses. "Statutes should be construed to avoid absurd consequences and bizarre results;" Wilson v. Warden,34 Conn. App. 503, 509 (1994); and, also construed, "so far as reasonably possible, as operative and harmonious with every other CT Page 4067 part of the statute." Peck v. Jacquemin, 196 Conn. 53, 72 (1985).
Based on the plain and unambiguous meaning of the term maintenance, as consistently construed by our Supreme Court since 1815, this court concludes that a person adjudicated the father of a child in proceedings under General Statutes § 46b-160 is liable for lying-in expenses, as required by § 46b-171.
For the reasons stated above, I conclude that the defendant father, in the light of the parties' respective financial condition, shall pay to the plaintiff mother the sum of $3,287.71, equal to one half of $6,575.41,[3] the `lying-in' expenses related to the birth, by payments of $25 per week until paid. Said order shall be secured by immediate wage garnishment.
The issue of retroactivity of the current support order may be assigned for hearing at the request of the parties.
Teller, J.